# MEMORANDA

OF

*CAUSES DECIDED DURING THE PERIOD EMBRACED IN THIS VOLUME, WHICH ARE NOT REPORTED IN FULL.*

---

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES MARTELL, Appellant.

Upon trial of an indictment for murder, two of the jurors, upon being challenged, testified that, from what they had read of the transaction and the facts in the case, they had formed an opinion, which would require evidence to remove, but that, notwithstanding the opinion thus formed, they "thought" they could render an impartial verdict according to the evidence. The court ruled they were competent, no exception was taken, and said jurors were not challenged peremptorily. It was claimed on appeal that they were incompetent as jurors, as to render a juror competent who has thus formed an opinion, he is required by the statute (Code Crim. Pro. § 376) to testify that he "believes," not that he thinks, his opinion will not influence his verdict. *Held*, untenable; that it was not necessary that the juror should testify in the precise words of the statute, and the two expressions were substantially equivalent.

Although improper evidence, offered on the part of the prosecution, is received upon the trial of an indictment for murder, if it appears that the evidence was harmless to defendant, its admission is not a ground for reversal.

(Argued March 2, 1893 ; decided April 11, 1893.)

APPEAL from judgment of the Court of Oyer and Terminer, in and for the county of Saratoga, entered October 27, 1892, upon a verdict convicting defendant of the crime of murder in the first degree.

The defendant was indicted for the murder of John Parello.

The following is the opinion in full :

" It is conceded that Parello came to his death from a stab wound in the neck inflicted by the defendant with a knife. The evidence does not admit of a denial of the fact. Nor is it claimed that the homicide was justifiable. · The only real

question open for the determination of the jury related to the grade of the offense, whether it was murder in the first degree, or in the second degree, or some degree of manslaughter.

"It appears that the defendant and Parello were Italians, and they with one Charles Weeks were employed on the electric railroad in the village of Saratoga. Parello lived with one Florence Stoddard and the defendant with one Ida Walker, whom he called his wife. On the evening of May 4, 1892, Martell (the defendant), Charles Weeks and one Job Weeks met in a saloon in the village and after they had drank together several times, left the saloon, going in the direction of the house where Charles Weeks lived. Charles Weeks stopped on the way, and Martell and Job Weeks passed on to the house of Charles Weeks. The latter soon followed them, and he testified that as he was about entering his house, Parello came out of the kitchen door and started in the direction of his home. Weeks found in the house his wife and the two women, Florence Stoddard and Ida Walker, Job Weeks and another man (Hazard), and the defendant Martell. Martell was about to leave the house and did immediately leave it, using threatening language in respect to Parello, accusing him of having had improper relations with Ida Walker, and saying he would 'fix' him, or, as stated by one of the witnesses, would 'kill' him. He ran after Parello, who was also running, and Martell caught him about 200 feet from Weeks' house and the parties had a 'tussle,' each appearing to be striking the other. Parello finally got loose from Martell and commenced to run again, and was again overtaken by Martell, who clinched him and threw him to the ground, and appeared to be striking him. Parello got loose again and ran and as before was followed by Martell, and was again thrown down, and the blows were repeated, and then Parello was released by some of the persons who had followed the parties from the Weeks' house, or by one Brisbin, who had been attracted by the affray. Parello 'tried to say something; he made a kind of gurgling noise as though he had something in his throat.' Soon after his body was found dead near the place of the affray. The autopsy disclosed seven incised wounds on his person, two of

which penetrated the abdominal cavity. There were wounds in the back of his person, and one in the neck, which latter was the immediate cause of his death. This wound was made with a knife, which severed some of the arteries, and the physician testified that the wound indicated that the knife had been 'twisted' after it entered the body. The affray took place about ten o'clock in the evening. The two Weeks and Hazard, who followed the two men and witnessed the encounter, permitted the murderous attack to go on, without attempting to interfere, except at the last moment. They testify that they saw no knife in the hands of either of the men, and did not suppose that any serious injury had been inflicted. Martell returned to the Weeks' house, exhibiting as some of the witnesses testify, great anger and excitement, saying that he had 'fixed' Parello, and threatening to kill Ida Walker, because of her alleged infidelity. It does not appear that his charge against Parello was justified. Martell had been wounded also. One of his eyes had been punctured, and it resulted in his losing the sight, and there was an incised scalp wound. There is no direct explanation of how these wounds were inflicted. It is most probable that they were inflicted by Parello in the course of the struggle. Weeks testified that after Martell returned to the house, Martell handed him a (pocket) knife, on which there was blood, which he refused to receive and handed it back to him, and that Martell said, 'I don't want it; get away with it,' and that Martell went out near to the fence and made a motion as if throwing something away and then returned. A knife was found near the point where, if Martell threw away a knife on the occasion testified to by Weeks, the knife would naturally be found. Another witness corroborates Weeks' testimony as to the conversation in the room about the knife. There is some obscurity in the evidence as to the knife used by Martell. A pocket knife was found on his person when arrested, a few hours after the affray, stained, as Weeks testifies, with blood.

"Upon the facts, of which the foregoing is a brief outline, and as to which there was but little conflict, the case was submitted to the jury by the learned trial judge in a brief but per-

fectly accurate statement of the law governing the different degrees of homicide, and to the charge no exception was taken. The court instructed the jury that to constitute murder in the first degree, there must be a killing of a human being from a deliberate and premeditated design to effect the death of the person killed or another; that the People 'have the burden of showing, *first*, that the killing did take place; that it was done deliberately and with premeditation, and that they must satisfy the jury of these facts beyond a reasonable doubt,' and further, that 'you must be satisfied that he (defendant) committed the crime deliberately and with premeditation; that means that he did it knowing that he was going to do so, and having deliberately made up his mind that he was going to kill this man.' With equal precision the court charged as to what constitutes murder in the second degree. He said: 'But if you find that he did not deliberately and with premeditation commit this crime, yet did it with malice, intending to kill him and knowing what he was doing, being actuated with malice, yet not with that degree of deliberation and premeditation that would characterize murder in the first degree, then he would be guilty of murder in the second degree.' So in respect to the offense of manslaughter the court said: 'If you find both of these elements lacking and find there was a fight between these parties, and that defendant had no design to kill the deceased, then you must find him guilty of manslaughter in the first degree. If you find he did it in a quarrel in the heat of passion, without any design to effect the death of the party, without a design to use this weapon for the purpose of killing him, then you must find he was guilty of manslaughter in the second degree.'

" It must be assumed that the degree of the crime as disclosed by the facts and the inferences from them on the one side or the other, had been fully discussed by counsel before the jury, and it is unreasonable to suppose that a jury sitting upon the question of life or death, did not fully appreciate the simple distinctions which under the statute separate the different degrees of homicide, or that, if fuller information was desired, they would not have asked for further instructions. It would be an anomaly to reverse a judgment of conviction

because in the charge, which is admitted to be accurate, and which certainly described all the elements going to make up the crime of homicide in its various degrees, there was not a more elaborate presentation by the judge, and especially in a case defended by competent counsel who requested no further or fuller instruction to the jury than was given. The verdict was in our opinion fully justified by the evidence. The defendant sought the encounter and persistently followed up the deceased, striking him repeatedly with a deadly weapon, while during the whole time the deceased was endeavoring to escape and run away. There can be no doubt that the defendant was prompted by jealousy on account of the supposed interference of the deceased with the defendant's possession of the abandoned woman, Ida Walker. This is plain beyond controversy, as shown by the declarations of the defendant just previous to the encounter, and in Weeks' house after he returned from the affray. Premeditation and deliberation is an irresistible inference from the uncontradicted facts, and that defendant designed to kill was found by the jury upon ample evidence.

"Two of the jurors who sat in the case testified, upon being challenged, that they had read of the transaction and the facts in the case and that from what they had read they formed an opinion which it would require evidence to remove. In answer to a question by the court both of them stated that, notwithstanding the opinion thus formed, they thought they could render an impartial verdict in the case according to the evidence. The learned trial judge ruled that they were competent jurors and they were permitted to sit in the case without peremptory challenge, which the defendant was entitled to interpose if he desired, and no exception was taken to the ruling. It is now urged that as before the present statute they would have been incompetent as jurors, they were still incompetent, as under it they were required to swear to their *belief* that, notwithstanding the opinion formed they could render an impartial verdict in accordance with the testimony. This position is based upon a criticism of the words of the statute and the words of the jurors in reply to the inquiry of the court. It is said that the expression 'I think,' is not

equivalent to 'I believe.' That the former implies conjecture or mere guess, while the latter denotes belief in the ability to properly discharge the duty of a juror and is a stronger and more definite expression. We think the contention is untenable. It is not necessary that the juror in his examination should swear in the very words of the statute. The two expressions are substantially equivalent in common language, and there can be no reasonable doubt that the oath of the jurors in each case disclosed that condition of mind which the statute requires and that the court could properly decide that they were competent.

"There was but one exception taken during the trial, after the jury was empanelled, which requires notice. Florence Stoddard was permitted under objection of the defendant to testify to a statement made by Ida Walker in the absence of the defendant, that 'there will be a fight, because Jimmy is jealous of John Parello and her.' The admission of this evidence was undoubtedly erroneous, as being the declaration of a third person in the absence of the party. Immediately following this evidence is a statement in the record as follows : 'At the close of the People's case this evidence was stricken out.' It is claimed that this entry was incorrect and that the evidence stricken out was some other evidence, and this is said to be shown by other parts of the record. But the statement of Ida Walker, at most, was a confirmation of the fact established beyond dispute, that jealousy was the motive which impelled the defendant to commit this murder. Moreover, jealousy was the only fact which explained the defendant's conduct, and although not a legal defense, if the other facts admitted of a construction by the jury which would reduce the grade of the homicide, the fact that the defendant was impelled by one of the fiercest and most implacable of human passions, would very likely have been taken by the jury as an extenuation and mitigation of the crime. The error was not only harmless, but if any weight was accorded to the statement of the woman, the evidence was of advantage to the defendant.

"We are satisfied with the verdict, and no material error being disclosed by the record, the judgment should be affirmed."

*James T. Brusnihan* and *Charles H. Tefft* for appellant.

*John Person* and *T. F. Hamilton* for respondent.

ANDREWS, Ch. J., reads for affirmance.

All concur, except O'BRIEN, J., not voting.

Judgment affirmed.