THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v HERBERT X. BLYDEN, Appellant.

Fourth Department, February 26, 1981

APPEARANCES OF COUNSEL

*Leonard J. Klaif* for appellant.

*Edward C. Cosgrove, District Attorney (Kurt T. Sajda* of counsel), for respondent.

OPINION OF THE COURT

SIMONS, J. P.

Defendant has been convicted of first degree assault after a jury found that he struck Purcell "Rap" Brown in the jaw with a stapling gun. The attack was instigated because of an earlier quarrel between defendant and Brown and it occurred while Brown was on the ground repairing the muffler on his automobile. Defendant struck the vic-

tim with such force that his jaw was fractured in several places and two of his teeth were broken and became imbedded in the metal stapler.

Defendant raises two issues requiring discussion. First, he contends that the court erred in denying his request to disqualify a juror for cause because the prospective juror admitted to some prejudice against minorities and defendant is black (as were the victim and most of the witnesses). Second, he contends that he was denied his statutory right to a speedy trial.

■ ■ The conviction should be affirmed. Actual bias based on racial or ethnic prejudice is grounds for juror disqualification under CPL 270.20 (subd 1, par [b]), but the trial court did not abuse its discretion in this case in holding that the disqualification was overcome by the juror's expurgatory oath. Nor do we find the People responsible for a delay of over six months in bringing defendant to trial.

## I

■ A criminal defendant is constitutionally entitled to a trial by jury (US Const, 6th Amdt; NY Const, art I, § 2; *Duncan v Louisiana*, 391 US 145), and the constitutional standard is not met unless the jury is impartial *(Irwin v Dowd*, 366 US 717, 722). By statute a juror is legally presumed biased and disqualified for cause for any of several enumerated reasons (see CPL 270.20, subd 1), but we are concerned here only with the disqualification set forth in paragraph (b) of subdivision 1 of the statute. It provides that a prospective juror may be challenged for cause if "(b) He has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20, subd 1, par [b]).

That condition, no less than relationship or other statutory impediment, disqualifies the prospective juror unless it is overcome. Unlike most of the other statutory grounds, however, in which the bias, though implied, is conclusive as a matter of law, disqualification because of the prospective juror's state of mind requires a judicial inquiry on the substantiality of the bias. If the court is satisfied that the prospective juror's state of mind does not preclude his impartial participation in the trial, it may deny a challenge for

cause. Historically, the issue was tested by asking the juror to purge his disqualification by oath (see former Code Crim Pro, § 376, subd 2; see *People v McQuade*, 110 NY 284, 300-301). Although the present statute does not contain such a provision, the Court of Appeals has held that disqualification for cause may be overcome if the prospective juror swears (1) that he believes that his state of mind or opinion will not influence his verdict and (2) that he can render an impartial verdict according to the evidence (see *People v Branch*, 46 NY2d 645; *People v Biondi*, 41 NY2d 483, cert den 434 US 928; and see *People v Culhane*, 33 NY2d 90; *People v Wilmarth*, 156 NY 566, 568). By this oath the prospective juror is required not only to make a careful analysis of his feelings and then swear that they will not influence his decision, but he also tests his belief that he can render an impartial decision on the facts (see *People v Wilmarth, supra,* p 568). Without the juror's oath, actual bias is conclusively presumed. With it, a factual issue is created to be decided by the court in the sound exercise of its discretion (CPL 270.20, subd 2; see *People v McQuade*, 110 NY 284, *supra; People v Casey*, 96 NY 115).

It is constitutional error to foreclose inquiry of a prospective juror concerning his possible racial or ethnic prejudice (see *Ham v South Carolina*, 409 US 524), and in this case a prospective juror acknowledged that he had some "feelings against minorities". If such feelings prevented him from fairly weighing the evidence and rendering a verdict based only upon it, they would support a challenge for cause (see *People v Leonti*, 262 NY 256; *People v Rubicco*, 42 AD2d 719, affd 34 NY2d 841; *People v Presley*, 22 AD2d 151, affd 16 NY2d 738; see, generally, Racial Prejudice of Prospective Jurors, Ann., 94 ALR3d 15). Indeed, the Court of Appeals has held that it is not reversible error for a court, *sua sponte*, to dismiss a juror whom it finds disqualified because of racial bias (see *People v Decker*, 157 NY 186).

We turn, then, to the facts of this case.

During its preliminary instructions the court invited any prospective juror who suspected that he or she harbored any prejudice to approach the bench, noting that "jurors are human and may have prejudices or sympathies" toward "certain groups". One of the veniremen, Mr. Dillsworth,

did so. During subsequent questioning by the court and counsel in chambers, he stated that he was a construction worker, that his employment had been affected by affirmative action programs and, in fact, he had been displaced by a member of a minority group on one job because of the Federal affirmative action requirements. He stated that although he did not have any hard feelings against "coloreds", "Indians" or "Mexicans", "when it comes to minorities" he had "some words with people", he got "up tight" and "flip[ped] his wig" against them. He thought "a lot of minorities made a lot more money than [he] did this year." Mr. Dillsworth stated that his complaint was against "the government", "minorities" and affirmative action programs but he stated he did not have any opinion about this case or defendant's guilt or innocence. When first asked if his experience would affect his decision in defendant's case, he answered, "I don't know. I don't know if it would or not, and I wouldn't want to jeopardize this guy's case, because of that. That is why I come forward." On further questioning Dillsworth stated that he did not think this background would influence his verdict, but he could not say so for sure. Finally, at the end of a relatively short *voir dire*, he was asked once more whether his experience would influence his verdict and he responded, "I don't think so." He stated unequivocally that he had not made up his mind on the case, and when asked whether he could put aside his feelings about minorities, keep an open mind and base his decision on the evidence before him he replied three times to three different formulations of the question, "I think I could."

Thus, Mr. Dillsworth answered the questions required by the expurgatory oath. His answers were expressed in terms of "I think I could" or, in the case of one question worded negatively, "I don't think so." Undoubtedly, the expression "I think" connotes mental reservation to some but it has been held acceptable as the equivalent to a statement of belief *(People v Martell*, 138 NY 595, 600), and the law does not require that any particular words be recited if the prospective juror's answers, as here, are unequivocal *(People v Culhane*, 33 NY2d 90, *supra)*.

Certainly, it is preferable that a Trial Judge, when considering a challenge for cause, lean toward disqualifying a

prospective juror of dubious impartiality (see *People v Provenzano*, 50 NY2d 420, 425; *People v Branch*, 46 NY2d 645, 651, *supra*). However, on this record we are unable to say that Mr. Dillsworth was disqualified as a matter of law and that the court abused its discretion in denying defendant's challenge for cause.

Unfortunately, when the court ruled on counsel's challenge, it stated: "Denied. Since this is the first—no peremtory challenges have been exercised at this point. Let the record so reveal. Okay." Defendant then excused Mr. Dillsworth and eventually he did use all of his peremptory challenges. Defendant, noting correctly that the fact that he had not exercised any peremptory challenges at the time he requested a ruling or that peremptory challenges remained to him was irrelevant, contends that the court's ruling was reversible error because based on an erroneous ground (see CPL 270.20, subd 2; *People v Culhane*, *supra*, pp 90, 97). We, however, find no error in the court's ruling, his remarks at the time of ruling notwithstanding.

## II

Next, defendant contends that the indictment should have been dismissed because he was denied his statutory right to a speedy trial.

Defendant was arraigned on November 4, 1976 and the trial commenced on December 4, 1978. Specifically, he contends that the court erred in not charging two periods of delay, totaling 10 months, to the People. The respective dates are from January 21, 1977 to August 23, 1977 and November 5, 1977 to March 8, 1978. The hearing court failed to make detailed findings of fact and ordinarily this would require a remittitur, but we may resolve this limited claim on the record and therefore we do so.

The delay from January to August was occasioned almost entirely by time consumed in resolving discovery matters. January 21 is selected as the starting date by defendant because he claims that is the date that his motions to dismiss and for suppression were denied. The record makes it clear, however, that the January 21 order decided only the motion to dismiss. The several other matters covered by defendant's earlier omnibus motion were under

discussion by the parties and advisement by the court well into the summer. While the delay is unfortunate, it is apparent that the adjournments were not requested by the People. They were directed by the court as it proceeded to dispose of the omnibus motion piecemeal. Manifestly, defendant acquiesced in the delays because his supporting papers state that adjournments on the motion were had at his request on December 9 and 13, 1976 and April 27, 1977 and that oral argument was not completed on the motion until June 2, 1977. Under the circumstances, the time from January 21 until June 20, 1977 is not chargeable to the People (see *People v Pace*, 71 AD2d 609; *People v Buchanan*, 52 AD2d 983; *People v Panarella*, 50 AD2d 304).

The remaining period of delay to be considered therefore was June 21, 1977 to August 23, 1977 and November 5, 1977 to March 8, 1978, a period of six months and five days (see *People v Battles*, 77 AD2d 405, 407). Of these contested periods, at least the time from November 5 through 14, may not be charged to the People because it resulted from defendant's request for an adjournment of the trial date. Excluding this period and the time from January 21 to June 21, the period of unexcused delay chargeable to the People does not exceed six months. There were other dates and other adjournments, but it is unnecessary for us to rule on the responsibility for them. We find that the above periods of time were excludable from the total and sufficient to reduce the delay chargeable to the People to less than six months. The motion for dismissal was properly denied.

## III

We have considered the other points raised by defendant and find none requires reversal.

The judgment should be affirmed.

CALLAHAN, DENMAN, MOULE and SCHNEPP, JJ., concur.

Judgment unanimously affirmed.