OPINION OF THE COURT
Chief Judge Cooke.
After a jury trial, defendant Herbert X. Blyden was convicted of assault in the first degree (Penal Law, § 120.10). The Appellate Division affirmed the conviction. On appeal to this court, defendant, who is black, argues that the trial court committed reversible error when it refused to discharge for cause a prospective juror who voiced hostility to racial minorities. Because the juror *75 never expressly and unequivocally stated that his feeling toward minorities would not affect his verdict and that he could render an impartial verdict based on the evidence, this court reverses defendant’s conviction and remits for a new trial.
Defendant’s trial began on December 4,1979. During an early phase of the jury selection process, a prospective juror responded to a general question by the Judge regarding racial prejudice by indicating that he wished to speak to the Judge. At proceedings in chambers, the juror was questioned by the Judge and attorneys about his feelings toward minorities.
When asked by the Judge to “state your feelings”, the juror responded, “I’m against minorities. Now, not colored, not Indian, but what the government considers minorities. I work on construction, and when that comes up, I get up tight, that is all.” He stated that the cause of his feelings was that “the government says you got to have a certain amount of people, minorities, on a job that is federally funded. And I think I pay taxes the same as anybody else, and that is why I get up tight.”
Upon the Judge’s first inquiry as to whether the juror’s feelings would affect his deliberations, the juror replied, “I don’t know. I don’t know if it would or not, and I wouldn’t want to jeopardize this guy’s case, because of that. That is why I came forward.” The juror repeated these misgivings under questioning by the prosecutor. He then told defense counsel that “I have been known to flip my wig when minorities come into [a conversation]. This summer I wasn’t allowed to go on a job because the next person that went on was a minority. It turned out to be an Indian, they had to put a minority on the next — the next construction.” He added, “I bet a lot of minorities made a lot more money than I did this year. That is what I mean, why I got up tight.”
Finally, in response to the court’s thrice-repeated question whether he could put aside his feelings about minorities, the juror stated, “Yes, I think I could,” “I think I could,” and, “Yes, I think I could.” He also stated “absolutely not” when asked by the Judge if he had made up his *76 mind “about this case on the sketchy information that I gave you”.
Defense counsel challenged the prospective juror for cause, but the Trial Judge denied the challenge. Defendant’s attorney then used a peremptory challenge to remove the juror. Because defendant éxhausted his peremptory challenges before the completion of jury selection, the claimed error in denying his challenge for cause may be considered on this appeal (see CPL 270.20, subd 2).
In determining whether the trial court erred in refusing to discharge the challenged juror for cause, it is necessary to look first to CPL 270.20 (subd 1, par [b]), which authorizes a challenge for cause where the juror “has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial”.* This provision reflects the long-standing recognition of “the fundamental rule that an accused person is entitled to be tried by a fair and impartial jury” (People v McQuade, 110 NY 284, 300; see People v Branch, 46 NY2d 645, 652; Reynolds v United States, 98 US 145, 155). Questioning of prospective jurors on voir dire, of course, is crucial to the selection of- an impartial jury (see Ham v South Carolina, 409 US 524; Aldridge v United States, 283 US 308).
In light of the prospective juror’s initial comments, the Trial Judge in this case appropriately permitted further voir dire and took part himself in the exploration of the subject. The question to be resolved is whether the juror’s answers to these subsequent questions overcame the clear indication of bias in the juror’s previous statements.
At common law, a prospective juror’s expression of an opinion or impression bearing on the guilt or innocence of a defendant was conclusive grounds for disqualification (see People v McQuade, supra). In 1872, however, the Legisla *77 ture enacted the predecessor of the current Criminal Procedure Law provision (L 1872, ch 475, § 1). Codified as subdivision 2 of section 376 of the old Code of Criminal Procedure, the statute provided that a previous expression of opinion or impression indicating “actual bias” could be overcome if the prospective juror “declare on oath, that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied, that he does not entertain such a present opinion or impression as would influence his verdict.”
When the Criminal Procedure Law superseded the old code in 1971, all references to the “expurgatory oath” were deleted (see CPL 270.20). The District Attorney asserts that the oath maintains its vitality, while defendant contends both that it is no longer applicable and that even if it was applicable, it was not satisfied in this case.
In People v Culhane (33 NY2d 90, 104, n 2) this court, although dealing with a case falling under the old Code of Criminal Procedure, noted that under the Criminal Procedure Law “the talismanic expurgatory oath has been abandoned, so that there is no longer any facile method for purging a prima facie showing of bias” and that “the new law gives the Trial Judge greater flexibility and a greater responsibility in determining which veniremen should be excused for cause.” This flexibility is also reflected in the language of the new provision (CPL 270.20, subd 1, par [b]), which focuses on whether the juror “has a state of mind that is likely to preclude him from rendering an impartial verdict” without reference to any mechanical procedure for purging the taint of a prior expression of opinion about the guilt or innocence of the defendant. Thus, to the extent that the old code’s expurgatory oath may have been used as a mere pro forma recitation, it is no longer available.
This is not to say that the rationale underlying the expurgatory oath has no continuing validity (see People v Branch, 46 NY2d 645, 651, supra). To the contrary, it is an effective means of resolving doubt about a prospective juror’s impartiality. When a question is raised regarding a prospective juror’s ability to render an impartial verdict, it *78 is still necessary that the prospective juror in unequivocal terms “must expressly state that his prior state of mind concerning either the case or either of the parties will not influence his verdict, and he must also state that he will render an impartial verdict based solely on the evidence” (People v Biondo, 41 NY2d 483, 485). Furthermore, in considering whether such statements are unequivocal, the juror’s testimony should be taken as a whole. “It is not enough to be able to point to detached language which, alone considered, would seem to meet” the oath’s requirements (People v McQuade, 110 NY 284, 301, supra).
In conclusion, it is essential that all elements of the required statements be voiced, and that they be voiced with conviction. The mere words themselves, however, have no talismanic power to convert a biased juror into an impartial one, although they do nonetheless provide a minimum level of protection. They must be taken in context. A hollow incantation, made without assurance or certitude, is not enough. Where there remains any doubt in the wake of such statements, when considered in the context of the juror’s over-all responses, the prospective juror should be discharged for cause. The costs to society and the criminal justice system of discharging the juror are comparatively slight, while the costs in fairness to the defendant and the general perception of fairness of not discharging such a juror are great. As this court stated in People v Branch (46 NY2d 645, 651-652, supra), “the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve. It is precisely for this reason that so many veniremen are made available for jury service.” Even if, through such caution, the court errs and removes an impartial juror, “the worst the court will have done * * * is to have replaced one impartial juror with another impartial juror” (People v Culhane, 33 NY2d 90, 108, n 3, supra).
Turning to the facts of the instant case, it is clear that the prospective juror’s initial statements indicated a hostility to racial minorities that cast serious doubt on his ability to render an impartial verdict. Throughout the further questioning, however, the juror never unequivo *79 cally stated that his bias would not influence his verdict' or that he could render an impartial verdict based on the evidence presented. To the Judge’s questions, the juror merely responded that he thought he could put aside his personal feelings and keep an open mind. These answers fall short of the required express and unequivocal declarations. In addition, although the juror’s use of the word “think” might not in every case render his or her statements inadequate (see People v Martell, 138 NY 595), in the context of this juror’s voir dire his responses can be considered nothing other than equivocal and uncertain. The fundamental importance of a defendant’s right to trial by an impartial jury requires more than this.
For these reasons, the order of the Appellate Division should be reversed and a new trial ordered.
Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Meyer concur; Judge Jones taking no part.
Order reversed, etc.

 Defendant also, argues that the prospective juror should have been discharged under CPL 270.20 (subd 1, par [c]) because his relationship to defendant was “of such nature that it is likely to preclude him from rendering an impartial verdict”. It is true that “[i]n the case of any of the relationships covered by subdivision (c) an expurgatory oath is not available to purge the taint of bias implied by law from the existence of the relationship” (People v Provenzano, 50 NY2d 420, 424; see People v Branch, 46 NY2d 645, 651). The expressions of animosity toward racial minorities by the juror in this case, however, do not constitute a “relationship” as envisioned by subdivision (c).