OPINION OF THE COURT
Wachtler, J.
After a jury trial the defendant, Thomas Torpey, was convicted of criminal mischief in the second degree (Penal Law, § 145.10), coercion in the first degree (Penal Law, § 135.65), attempted assault in the second degree (Penal Law, §§ 110.00,120.05) and conspiracy in the fourth degree (Penal Law, § 105.10) and acquitted of five other charges. *363 On this appeal his primary argument is that the trial court committed reversible error in refusing to allow his challenge for cause of a prospective juror under CPL 270.20 (subd 1, par [b]).
The charges against the defendant stem from an incident at a bar in Rochester on November 7,1981. The indictment alleges that the defendant, and several other persons, started fights and then caused substantial property damage as part of a conspiracy to commit grand larceny by extorting money from the owner of the bar.
The jury selection process revealed that many of the prospective jurors had heard or read about the incident in question. The publicity surrounding the incident was probably due in part to the fact that Torpey had been the subject of previous media reports, some of which had linked him to organized crime. The juror, whose prospective selection is the subject of this appeal, Mrs. Raleigh, was married to an investigator for the Monroe County Sheriff’s Department, and was one of several jurors who had heard or read about Torpey prior to the reports on the incident of November 7, 1981. The relevant portion of her examination is as follows:
EXAMINATION BY COURT:
“Q. Now, you got up when I said have you heard anything about that name. You got up. Tell us what you know about it, if you have heard anything where you heard it?”
mrs. raleigh: “A. Well, probably in the paper.
“Q. All right. Listen, we don’t live in a sanitized society. It is not a crime to read the paper or watch TV. What do you remember about it?
“A. Well, also, I think maybe I heard the name at home.
“Q. In what respect?
“A. Well, my husband is an investigator for the Sheriff’s Department and I probably heard his name through him. I’m not positive.”
EXAMINATION BY MR. CASTRO: (Prosecutor)
“Q. And I guess like every husband he comes home and tells you about the things he works on once in a while?
“A. Uh-huh.
*364 “Q. Then, you have heard the name Thomas Torpey?
“A. I think so, yes.
“Q. Have you heard that name in connection with any other names?
“A. I don’t know if it is at home but in the paper it was in connection with mafia.
“Q. Based on what your husband may have said have you reached an opinion? When he has told you these things over the years did you reach an opinion one way or the other as to the kind of person Mr. Torpey was, his reputation?
“A. I think probably to a certain degree, yes.
“Q. Would that be a negative opinion of him?
“A. Probably, yes.
* * *
“Q. With regard to the papers and some association with the mafia, do you recall what you have read?
“A. Specifically, no. But I think it had to do with — I don’t know if I’m supposed to say that but that he was a hit man. Can I go now?”
* * *
examination by mr. lapine: (Defendant’s lawyer)
“Q. How are you doing? Now, look, let’s be honest with each other here. You have an impression that Mr. Torpey is connected with the mafia. It is an impression you have gained from either what your husband has talked about or the newspapers, right?
“A. Right.
“Q. You have also heard that he might be a hit man? “A. Right.
“Q. He has a couple of big strikes against him?
“A. Yes, sir.
“Q. Now, it wouldn’t be fair to have someone with you frame of mind sitting in judgment of him?
“A. Probably not.”
EXAMINATION BY THE COURT:
*365 “Q. You have heard of people that reputations that are not necessarily true?
“A. That’s right.
“Q. And are you willing to put aside whatever you may have heard and listen to this case and give both sides a fair trial based on the evidence in this courtroom and nothing else?
“A. I think I can.”
Torpey’s counsel challenged Mrs. Raleigh for cause several times, but the Trial Judge denied the challenge each time. Counsel eventually used a peremptory challenge to exclude her. Because Torpey exhausted his peremptory challenges before the completion of jury selection, he may and does assert on this appeal that the denial of the challenge for cause was reversible error (CPL 270.20, subd 2; People u Blyden, 55 NY2d 73, 76).
The Appellate Division, with one Justice dissenting, held that the Trial Judge acted within his discretion in not allowing the challenge for cause and affirmed the convictions.
CPL 270.20 (subd 1, par [b]) allows a challenge for cause where a prospective juror “has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial”. This provision reflects the long-standing recognition that “[njothing is more basic to the criminal process than the right of an accused to a trial by an impartial jury” (People v Branch, 46 NY2d 645, 652; see People v McQuade, 110 NY 284, 300).
At common law, any prospective juror who expressed an opinion as to the defendant’s guilt, or who otherwise demonstrated that he was “ ‘not indifferent between the parties’ ”, was disqualified as a matter of law (People v Culhane, 33 NY2d 90,102 [quoting Greenfield v People, 74 NY 277, 281]; see People v McQuade, 110 NY 284, 300, supra). In 1872, the Legislature enacted a modified version of the common-law rule (L 1872, ch 475, § 1) and the substance of the 1872 act was codified in subdivision 2 of section 376 of the Code of Criminal Procedure (People v McQuade, 110 NY 284, 300, supra). This statute allowed a challenge for *366 cause of a juror based on a prejudicial state of mind (“actual bias”), but added that an opinion or impression as to the guilt or innocence of the defendant was not a basis for disqualifying a juror if “he declare on oath, that he believes that such opinion or impression will not influence his verdict, and that he can render an impartial verdict according to the evidence, and the court is satisfied, that he does not entertain such a present opinion or impression as would influence his verdict”.
In virtually all of the cases decided by this court where a prospective juror has been challenged for cause based upon an actual bias, the challenge has been premised on the juror having expressed an opinion as to the guilt of the defendant for the charges being tried (see, e.g., People v Culhane, 33 NY2d 90, supra; People u Hampartjoomian, 196 NY 77; People v Wilmarth, 156 NY 566). The prejudice to the defendant of a juror who holds an opinion as to his guilt is obvious. Actual bias, or, as stated in the current provision, a state of mind that is likely to preclude a juror from rendering an impartial verdict based upon the evidence at trial, is not limited, however, to situations where a prospective juror has formed an opinion as to the defendant’s guilt. Thus, in People v Blyden (55 NY2d 73, supra), where a black defendant was being tried, we held that the Trial Judge erred in not allowing a challenge for cause based upon CPL 270.20 (subd 1, par [b]) to a prospective juror who had expressed a prejudice against minorities, including blacks, based upon particular incidents.
Our prior cases have not addressed the situation present here, where a prospective juror has an unfavorable impression of the defendant which is based upon having heard or read about him in a context apart from the specific crimes for which he is being tried. It is clear, however, that such an impression can create as much of an actual bias as where the prospective juror has an opinion as to the defendant’s guilt of the crime charged, or is prejudiced against a minority group of which the defendant is a member. The principles underlying Blyden and Culhane apply regardless of the cause of the prospective juror’s actual bias, and both CPL 270.20 (subd 1, par [b]) and its predecessor refer broadly to the presence of a “state of mind” which indicates the actual bias.
*367 The statements by Mrs. Raleigh that she associated the defendant with the Mafia, that she had the impression for several years that he was a “hit man”, that she “probably” had a negative opinion of him, and that it would “probably not” be fair to the defendant to have somebody with her state of mind on the jury indicate that she had “a state of mind that [was] likely to preclude [her] from rendering an impartial verdict based upon the evidence adduced at the trial”. We reaffirm the holding in People v Williams (63 NY2d 882, 885) that not every predisposition with respect to general bias subjects a prospective juror to disqualification for actual bias, but find here that as a matter of law “there is a substantial risk that [Mrs. Raleigh’s] predispositions will affect [her] ability * * * to discharge [her] responsibilities”.
CPL 270.20 (subd 1, par [b]), unlike subdivision 2 of section 376 of the Code of Criminal Procedure, does not set forth an “expurgatory oath” which can be used to overcome a previously expressed actual bias. While the expurgatory oath is thus not automatically available as a “facile method for purging a prima facie showing of bias” (People v Culhane, 33 NY2d 90,104, n 2, supra), it still retains some validity as “an effective means of resolving doubt about a prospective juror’s impartiality” (People v Blyden, 55 NY2d 73, 77, supra; see People v Branch, 46 NY2d 645, 651, supra). Thus, where there is a prima facie showing of actual bias, the Trial Judge should require the prospective juror to “expressly state that his prior state of mind * * * will not influence his verdict, and * * * that he will render an impartial verdict based solely on the evidence” (People v Biondo, 41 NY2d 483, 485).
In cases which arose under the old Code of Criminal Procedure this court required strict adherence to the terms of the expurgatory oath as set forth in the statute (People v Culhane, 33 NY2d 90, 106, and cases cited at pp 106-107, supra). The prospective juror had to make express declarations which unequivocally set forth the elements of the oath (People v Biondo, 41 NY2d 483, 485, supra; People v Culhane, 33 NY2d 90, 107, supra). These requirements still exist if the expurgatory oath, or an equivalent, is to be used to overcome an expression of actual bias (see People v *368 Blyden, 55 NY2d 73, 77-78, supra). Furthermore, in determining whether a prospective juror has made unequivocal declarations, it is necessary to look at his entire testimony; that the prospective juror once made the “proper” declarations does not necessarily mean that he has “purged” the bias (id.; People u McQuade, 110 NY 284, 301, supra).
Because, as noted above, virtually all “actual” bias cases involve a prospective juror who has formed an opinion as to the defendant’s guilt, the expurgatory oath has been discussed and employed most frequently in that context. An opinion as to the defendant’s guilt will most frequently be based upon something which the juror had read or heard about the criminal incident in question. As the evidence at trial will be addressed to that particular criminal incident, it can supplant whatever information about the defendant the juror has acquired and rebut any prior opinion. Thus, there is a logical basis for allowing a juror to “purge” a previous opinion as to the defendant’s guilt by expressly declaring that he will not be influenced by his prior opinion and will decide the case based only upon the evidence at trial.
Where, as here, the juror’s impression of the defendant concerns his over-all reputation or is based upon alleged prior acts which have nothing to do with the charges against him, the evidence at trial might not address the basis of the juror’s impression and thus may not alter this impression. For example, a juror such as Mrs. Raleigh who has the impression that the defendant has been a Mafia “hit man” might still have that impression after hearing all of the evidence even if she then has doubts as to whether the defendant is guilty of the crimes he is being charged with, and thus might vote for a conviction notwithstanding such doubts. Therefore, where a potential juror’s actual bias is caused by a highly unfavorable impression of the defendant’s over-all reputation or character, the test for whether such bias has been overcome by declarations is even stricter than where the juror has expressed an opinion as to the defendant’s guilt. In a case such as the present one, the prospective juror should be dismissed if there appears to be any possibility that his impressions of the defendant might influence his verdict (cf. People v Blyden, 55 NY2d 73, 78, supra).
*369 Mrs. Raleigh’s declarations which were aimed at purging her expressed bias revealed some uncertainty and, especially when read with the rest of her testimony, did not overcome the bias. The trial court thus erred in denying the defendant’s challenge to her for cause. In addition we again note, as we have in the past, that it is “almost always wise * * * to err on the side of disqualification” since “the worst the court will have done in most cases is to have replaced one impartial juror with another impartial juror” (People v Culhane, 33 NY2d 90,108, n 3, supra; see People v Branch, 46 NY2d 645, 651-652, supra; People v Blyden, 55 NY2d 73, 78, supra).
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Cooke and Judges Jasen, Jones, Meyer, Simons and Kaye concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order reversed and a new trial ordered.