■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALE SUMPTER, Appellant. [654 NYS2d 817] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Clabby, J.), rendered June 27, 1995, convicting him of criminal possession of stolen property in the third degree, attempted grand larceny in the third degree, unauthorized use of a motor vehicle in the third degree, criminal mischief in the fourth degree, and possession of burglar's tools, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

Contrary to the defendant's contention, we conclude that the evidence, viewed in the light most favorable to the People (*see, People v Contes,* 60 NY2d 620), was legally sufficient to prove his guilt of criminal possession of stolen property in the third degree beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (*see,* CPL 470.15 [5]). However, the defendant is entitled to a new trial because the trial court erred in denying his challenge for cause of a prospective juror.

The charges against the defendant involved the theft of a vehicle, and the primary witnesses against him were the police officers who arrested him. During voir dire the prospective jurors were told the names of two police officers from the 103rd Precinct who would testify for the prosecution. One of the prospective jurors advised the court that she was dating an officer from the 103rd Precinct. The defense counsel asked the juror:

"If it turned out that the officers that were testifying in this matter were from your boyfriend's home precinct, do you think that would create some difficulty for you?"

The Juror: "Yes, it could, and they are."

Defense counsel: "You know that?"

The Juror: "Yes."

Defense Counsel: "And you would have some difficulty?"

The Juror: "It could. I don't know that it would, but I could see how you might think it would".

Upon further questioning by defense counsel, the juror said "I think I could be impartial". Although the juror said she did not know either of the police witnesses, she had attended functions with officers from the 103rd Precinct, and there was a possibility that she had met these witnesses socially. The trial court did not inquire of the juror whether she would be able to render an impartial verdict under these circumstances. Defense counsel's request to excuse this juror for cause was denied, and defense counsel exercised a peremptory challenge.

CPL 270.20 (1) (b) provides that a juror may be challenged for cause on the ground that "[h]e has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial". Where there is a prima facie showing that a juror possesses such a state of mind, the trial court should require the prospective juror to expressly and unequivocally state that he or she can render an impartial verdict based solely on the evidence. In determining whether the juror has made an unequivocal declaration, the

juror's entire testimony should be considered (*see, People v Blyden,* 55 NY2d 73; *People v Torpey,* 63 NY2d 361). Courts should err on the side of caution and dismiss a juror whose impartiality is questionable *(see, People v Blyden, supra).*

Here, the prospective juror's statements established prima facie that she had a state of mind that was likely to preclude her from rendering an impartial verdict. The concern expressed by the juror did not relate to law enforcement officials in general but was a specific concern about her ability to fairly consider the testimony of her boyfriend's coworkers (*see, e.g., People v Walton,* 220 AD2d 286; *cf., People v Williams,* 63 NY2d 882). Moreover, there was a distinct possibility that, once the officers took the stand, she would find that she had previously met them socially.

The juror was therefore required to state in unequivocal terms that she would be able to render an impartial verdict based solely on the evidence. We conclude that the juror's statement to defense counsel that "I think I could be impartial" fell short of the required unequivocal declaration of impartiality, and, taken as a whole, her statements reveal that she was concerned that her relationship with police officers in the 103rd Precinct might affect her ability to be impartial. Accordingly, the defendant's challenge for cause should have been granted (*see, e.g., People v Butler,* 221 AD2d 918; *People v Punch,* 215 AD2d 410; *People v Williams,* 210 AD2d 914; *cf., People v Williams,* 222 AD2d 627).

This issue presents reversible error because the defendant exhausted all of his peremptory challenges before the completion of jury selection (*see,* CPL 270.20 [2]; *People v Torpey, supra; People v Birch,* 215 AD2d 573). O'Brien, J. P., Ritter and Altman, JJ., concur.

Sullivan, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Luciano, J., concurs: I agree with my colleagues in the majority that the defendant's contentions with regard to the sufficiency and weight of the evidence underlying his conviction of criminal possession of stolen property in the third degree are unpersuasive. However, unlike the majority, I discern no basis in the record for finding that the trial court improvidently exercised its broad discretion in denying the defendant's challenge of a prospective juror for cause. Accordingly, I vote to affirm the conviction.

Insofar as relevant, CPL 270.20 (1) (b) and (c) provide grounds for the dismissal of prospective jurors for actual bias and implied bias, respectively. Implied bias occurs if one of several

relationships specified in CPL 270.20 (1) (c) exists between the prospective juror and an individual actually involved in the case. No such relationship was present in this case. Clearly, the mere fact that the prospective juror was dating a police officer from the same precinct as the arresting officers cannot be said to constitute a circumstance likely to preclude an average juror from rendering an impartial verdict (*see, People v Colon,* 71 NY2d 410, 418, *cert denied* 487 US 1239; *People v Provenzano,* 50 NY2d 420, 425).

The record of the voir dire similarly fails to support the defendant's claim of actual bias under CPL 270.20 (1) (b). The prospective juror merely stated that she was dating a police officer who all parties concede had nothing to do with the case. She also candidly admitted that the officers who would testify at trial were from her boyfriend's precinct, but she unequivocally stated that she did not know them. Despite ample opportunity to do so, the defendant's counsel never sought to establish that the prospective juror did in fact know these officers. Therefore, actual bias was not established, inasmuch as it is well settled that a mere general relationship between a prospective juror and law enforcement personnel will not sustain a claim of actual bias (*see, People v Adams,* 222 AD2d 1124; *People v Dunkley,* 189 AD2d 776).

The defendant currently contends that the prospective juror actually expressed bias in favor of the police during voir dire, although he did not advance this specific claim in the trial court. In any event, the record again fails to support his assertion. Rather, viewing the prospective juror's responses in the context of her entire voir dire testimony, as we must (*see, People v Torpey,* 63 NY2d 361; *People v Blyden,* 55 NY2d 73), it is clear that she was attempting to dispel the defense counsel's erroneous suggestion that she harbored any such bias (e.g., when asked by the defendant's counsel if the fact that the testifying officers were from her boyfriend's precinct "would create some difficulty" for her, she responded that "[i]t could" but then promptly clarified her answer to say "I don't know that it would, but I could see how *you* might think it would" [emphasis supplied]). Most significantly, when the defendant's counsel asked her whether *she thought* that the situation might create some difficulty for her, the prospective juror responded "I think I could be impartial". These statements, considered in conjunction with the remainder of her voir dire responses, simply fail to indicate the expression of any actual bias (*see, People v. Williams,* 63 NY2d 882 [generalized racial predispositions did not create a substantial risk that jurors' ability to dis-

charge their responsibilities would be affected]; *People v Madison,* 230 AD2d 807, 808 [challenge properly denied where prospective juror, who was the boyfriend of a rape victim, stated that he could be fair and "did not manifestly indicate partiality"]; *People v Williams,* 222 AD2d 627 [denial of challenge appropriate where prospective juror, whose son was a member of the same police department which investigated the case, exhibited no particular predisposition in favor of police]; *People v Ruiz,* 162 AD2d 637, 638 [challenges against a security supervisor, a police officer in the same county where the crime was committed, and a law professor with expertise in New York's Penal Law, were properly denied where the prospective jurors "made no comments or otherwise conducted themselves in (such) a manner" as to suggest bias]). In short, the record does not establish that the prospective juror in this case possessed "a state of mind that [was] likely to preclude [her] from rendering an impartial verdict based upon the evidence adduced at the trial" (CPL 270.20 [1] [b]; *see generally, People v Clark,* 233 AD2d 522; *People v Williams,* 233 AD2d 348; *People v King,* 221 AD2d 472; *People v Campbell,* 216 AD2d 482).

Inasmuch as the prospective juror expressed no prejudice during voir dire, there was no prima facie demonstration of bias and thus no need for the rehabilitation of the individual through the use of an expurgatory oath (*see, People v Dempsey,* 217 AD2d 705; *People v Dunkley,* 189 AD2d 776, *supra*). However, even if such rehabilitation had been warranted, it was clearly satisfied by the prospective juror's statement that she could be impartial. The mere fact that she prefaced this statement with the words "I think" does not suggest, as the majority finds, that her response was equivocal. Rather, the prospective juror's language mirrored the language which the defendant's counsel used in phrasing the question (i.e., counsel asked the prospective juror "[w]hat do you *think*?" [emphasis supplied]). Under such circumstances, we have held similar responses to be sufficiently unequivocal to negate a claim of bias (*see, People v Williams,* 233 AD2d 348, *supra; People v Shipman,* 156 AD2d 494).

It is well settled that the determination of a challenge for cause on the ground of actual bias is a matter committed largely to the broad discretion of the trial court, with its "peculiar opportunities" to evaluate the prospective juror during voir dire (*People v Williams,* 63 NY2d 882, 885, *supra; People v Madison,* 230 AD2d 807, *supra; People v Callaghan,* 220 AD2d 609; *People v Pagan,* 191 AD2d 651). Here, the trial court was

familiar with the prospective juror's complete voir dire testimony, questioned her at length (during which she assured the court that she could fairly evaluate police testimony), and observed her manner and demeanor. Having done so, the court was satisfied that the prospective juror could discharge her responsibilities with fairness and impartiality. Since the record provides no basis either for departing from the general principle that the trial court's determination is entitled to great deference, or for disturbing the particular determination reached in this case, I find the defendant's contention to be without merit.