■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD E. BURDO, Appellant. [682 NYS2d 681] —Mikoll, J. Appeal from a judgment of the County Court of Clinton County (McGill, J.), rendered November 20, 1995, upon a verdict

convicting defendant of the crimes of murder in the second degree, kidnaping in the first degree and robbery in the first degree (two counts).

The disappearance of 79-year-old Leo Gebo and the subsequent discovery of his remains 10 months later was a matter of considerable notoriety in the Town of Altona, Clinton County. Initially, investigators speculated that Gebo's death may have been accidental due to the proximity of his head to a large rock, but subsequent examination by a forensic anthropologist yielded the conclusion that the death was a homicide. Investigation by the State Police led to the questioning, *inter alia*, of defendant and his nephew, Francis Burdo, and the two were eventually indicted.* Convicted after a jury trial, defendant complains of several errors associated with the proceedings, the first two of which we address.

Defendant's first claim of error pertains to audio-visual coverage of his arraignment. Shortly before defendant's arraignment, County Court heard arguments on the local newspaper and television station's applications to conduct audio-visual coverage of all proceedings related to defendant's case. Counsel for defendant objected on grounds of timeliness as well as concern that defendant's right to a fair trial would be jeopardized. In particular, he cited Clinton County's small population (approximately 80,000) and the likelihood that prospective jurors would view and/or read material prejudicial to defendant. The court permitted coverage of the arraignment over defendant's objection in contravention of three express provisions of Judiciary Law § 218.

Judiciary Law § 218 (5) (a) provides that "[a]udio-visual coverage of judicial proceedings, except for arraignments and suppression hearings, shall not be limited by the objection of counsel"; Judiciary Law § 218 (5) (b) provides that "[a]udio-visual coverage of arraignments and suppression hearings shall be permitted only with the consent of all parties to the proceeding"; Judiciary Law § 218. (7) (h) provides that "no audio-visual coverage of any arraignment or suppression hearing shall be permitted without the prior consent of all parties to the proceeding". This prohibition is repeated in 22 NYCRR 131.8, which provides that "(j) No coverage of any arraignment or suppression hearing shall be permitted without the prior consent of all parties to the proceeding" and that this restriction "may not be waived or modified except as provided" herein.

---

* The indictment against Francis Burdo was eventually dismissed following suppression of his confession (*People v Burdo*, 224 AD2d 115, *affd* 91 NY2d 146).

It is beyond cavil that the purpose of such protective provisions is to minimize pretrial prejudice to a defendant flowing from dissemination of information that would likely be heard or read by prospective jurors. We do not concur, as defendant urges, that the violation of law mandates reversal per se. We note that the record does not indicate that defendant sought review by the Administrative Judge of the order (*see*, Judiciary Law § 218 [3] [b]; 22 NYCRR 131.5 [a]). Defendant's otherwise wholly conclusory, speculative and unsubstantiated allegations that the jury pool was tainted by the audio-visual coverage of his arraignment do not support vacatur of his conviction. We hold that no reversal is mandated on this ground (*see generally, People v Shattell*, 179 AD2d 896, 898, *lv denied* 79 NY2d 1007).

We next examine defendant's claims of error relating to jury selection, specifically the denial of certain of his challenges for cause. We conclude that at least with respect to two jurors, County Court erred in denying defendant's challenges for cause. Because defendant exhausted his peremptory challenges prior to the completion of jury selection, a new trial is required (*see*, CPL 270.20 [2]).

The first challenge related to a juror who stated in voir dire that she had already formed an opinion that Gebo had been killed and that it was "just a question of who". She based this opinion on "the news media and the State Police investigation". County Court interjected, "I'd ask that you not express an opinion. If you have an opinion, fine. That is fine." She reiterated several times that she had formed such an opinion, adding that "I think it's hard not to you know, again, I think I'll—I think I can put that aside but you know I don't know how you can tell if you've never done it before." Neither the court nor the prosecutor conducted any rehabilitative questioning or further exploration. The juror was never asked, nor did she ever state, that she could put aside any preconceived opinions, that they would not affect her verdict and that she could render an impartial verdict based solely on the evidence. When defendant challenged this juror for cause, the court stated, "I did not get the impression that she had formed an opinion that could not be rebutted or dealt with in some way based on the evidence as submitted. I will deny it."

Defendant also challenged a juror employed as a correction worker at Clinton Correctional Facility whose husband was retired from the State Police Bureau of Criminal Investigations after 26 years of service. This juror came forward, in response to a general question to the panel, to volunteer that she

shared another prospective juror's positive feelings toward law enforcement. County Court had asked, "Do you think that if a police officer were on the stand that you might tend to give him greater credibility because of those experiences?" A juror responded "yes I may tend to favor the law enforcement * * * I might try [to put such leanings aside], but it would be kind of hard". When the court asked, "Anyone else?", the juror in question came forward and said, "I think I am like him. I have positive feelings toward law enforcement also and I would try to be unbiased, keep an open mind, but I don't know how much of it, you know, would work * * *. I work in corrections now. My husband was in the BCI [Bureau of Criminal Investigations] * * * I would try, but * * * I would try." The juror was never asked, nor did she ever state, that her positive feelings toward law enforcement would not affect her verdict and that she could render an impartial verdict based solely upon the evidence.

It has been repeatedly held that whenever such questions are raised, the trial court must conduct an inquiry to determine whether the prospective juror's predispositions will affect his or her ability to fairly render an impartial verdict based solely upon the evidence presented. Before being seated, "the prospective juror *in unequivocal terms 'must expressly state that his prior state of mind concerning either the case or either of the parties will not influence his verdict, and he must also state that he will render an impartial verdict based solely on the evidence'*" (*People v Blyden*, 55 NY2d 73, 78, quoting *People v Biondo*, 41 NY2d 483, 485, *cert denied* 434 US 928 [emphasis supplied]). "[I]t is essential that all elements of the required statements be voiced, and that they be voiced with conviction" (*id.*, at 78; *see, People v Walton*, 220 AD2d 286).

Equivocal, uncertain responses, including statements that a prospective juror will "try" or "hope" to be impartial, are insufficient in the absence of "express and unequivocal" declarations that the juror will put any preconceptions aside and render an impartial verdict based solely on the evidence (*see, e.g., People v Brzezicki*, 249 AD2d 917, 918-919 [where juror who stated that her ability to be impartial could "possibly" be affected replied only "I will try" to follow court's instruction on presumption of innocence]; *People v Sumpter*, 237 AD2d 389, 390-391, *lv denied* 90 NY2d 864 [juror replied only "I think I could be impartial"]; *People v Butler*, 221 AD2d 918 [where juror "provided assurances that he would try to be objective, but at the same time expressed doubt that he could be"]; *People v Webster*, 177 AD2d 1026, 1028, *lv denied* 79 NY2d 866 [juror expressed only that she "thought", "hoped" and "would try" to

put attitudes aside]; *People v Moore*, 172 AD2d 778 [where juror stated "I don't know" to question whether her relationship to a law enforcement agent would affect her ability to be impartial]; *People v Scott*, 170 AD2d 627 [where juror stated only "I hope not" and "I don't know" to question whether her relationship to a law enforcement agent would affect her ability to be impartial]; *People v Brown*, 111 AD2d 248, 249 [where juror replied "I don't think so" when asked if it would be difficult to put aside preconceived opinions]; *see also, People v Davis*, 248 AD2d 399; *People v Birch*, 215 AD2d 573; *People v Punch*, 215 AD2d 410; *People v Williams*, 210 AD2d 914; *People v Nicolas*, 171 AD2d 817; *People v Taylor*, 120 AD2d 325).

Where a prospective juror has expressed bias or preconceived opinions but subsequently articulates the ability to put aside such feelings or opinions, and to render an impartial verdict based upon the evidence, the trial court may properly deny a challenge for cause (*see, e.g., People v Williams*, 63 NY2d 882, 885 [where two jurors expressed generalized negative feelings about blacks, but explicitly stated and "expressed their confidence" that such feelings would not affect their ability to render an impartial verdict]; *see, People v Willard*, 226 AD2d 1014; *People v Butts*, 140 AD2d 739).

Applying these principles to the voir dire of the two challenged jurors herein, it is clear that further inquiry of each juror was necessitated by virtue of the responses given, and that to avoid a successful challenge for cause it was necessary for them to state, clearly and unequivocally, that they could put aside their predispositions and render an impartial verdict based solely on the evidence. This they did not do, nor were they asked whether they could do so. Consequently, it was error for County Court to deny defendant's challenges for cause, and because defendant exhausted his peremptory challenges prior to the completion of jury selection, a new trial is mandated (*see*, CPL 270.20 [2]).

We have previously noted, for obvious reasons of fundamental fairness as well as judicial economy, that " 'the trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion' " (*People v Butts, supra*, at 740, quoting *People v Branch*, 46 NY2d 645, 651). The Court of Appeals in *People v Blyden* (55 NY2d 73, 78, *supra*) reaffirmed this principle: "Where there remains any doubt in the wake of such statements, when considered in the context of the juror's over-all responses, the prospective juror should be discharged for cause. The costs to society and the criminal justice system of discharging the juror

are comparatively slight, while the costs in fairness to the defendant and the general perception of fairness of not discharging such a juror are great." Moreover, even where the court errs on the side of caution, "the worst the court will have done * * * is to have replaced one impartial juror with another impartial juror" (*People v Culhane*, 33 NY2d 90, 108, n 3). The wisdom of this approach is painfully apparent in the present case, which involved a lengthy trial followed by three days of jury deliberations.

In view of our conclusion that a new trial is mandated, we do not reach defendant's remaining contentions.

Cardona, P. J., Crew III, White and Carpinello, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Clinton County for a new trial.

