Bellacosa, J.
(dissenting). We respectfully dissent. Our votes are to affirm in People v Reyes and to reverse and remit the cases to the Appellate Division (see, CPL 470.25 [2] [d]; 470.40 [2] [b]) in People v Johnson and People v Sharper.
It is our view that the rulings by the respective trial courts during and concerning jury selection in these cases should be upheld. A remarkable fact drives our essential point home: several Judges and Justices at both appellate stages of review reasonably draw different interpretations from slices of these *617 transcripts. Thus, these cases are not, or at least should not be, susceptible to “matter-of-law” resolution on these respective, idiomatic voir dire conversations.
This Court has prudently invested trial courts with expansive discretion governing the voir dire jury selection process. The operating rubrics derived from today’s decision as applied to these cases, on the other hand, result in unwarranted nullification of otherwise properly tried cases that ended with jury verdicts of conviction. The practical “kicker” also unsettles the authority of Trial Judges to conduct and manage a fair, yet prompt, voir dire selection process.
CPL 270.20 (1) (b) allows a challenge for cause when a prospective juror “has a state of mind that is likely to preclude him [or her] from rendering an impartial verdict based upon the evidence adduced at the trial.” Generally, challenges under CPL 270.20 (1) (b) center on “allegations of actual bias” where a juror expresses an unwillingness to judge a case impartially and on the evidence (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 270.20, at 425). While this section no longer expressly contains an “expurgatory oath” requirement — unlike its Code of Criminal Procedure predecessor — the majority rationale effectively reinstates that formality on a fairly generalized basis. The new regimen is not progressive for jury selection practices. The elliptical and contextual explorations, delved among the participants concerning whether a prospective juror’s response is sufficient to dispel possible bias, are transformed into “matter-of-law” determinations that trump the judgment-calls of the trial courts at the “give and take” voir dire setting. A stricter and necessarily heightened review is superimposed long after trial, at a distanced appellate tribunal.
It is also useful to look briefly but more particularly at what the challenged jurors — who were peremptorily excused and never served in the respective cases — did say in these cases. In Johnson and Sharper, the trial court’s colloquy regarding the for-cause challenge to Prospective Juror 7, a doctor, focused on his possible desire to be excused because of his upcoming hospital rotation. Toward the end of the venire panel questioning, however, Prospective Juror 7 responded to defense counsel hypothesis concerning his possible verdict in the case. The doctor asserted he would vote not guilty and also stated that he would listen to the testimony of people who lived different lifestyles than he did, and give it the same credibility as he would give to testimony by those who lived the same lifestyle as he *618 did. He uttered other isolated and disquieting concerns, too, but our dissenting point of view is that the whole context and set of utterances ought to control, not potentially troublesome snippets.
Similarly, in Reyes, the prospective jurors simply attempted to answer counsel’s probings in a forthright manner. Prospective Juror 13 was honest about how drugs had affected her everyday sensibilities as a parent, but subsequently indicated that she “could only try to be fair.” In addition, when Prospective Juror 13 was asked whether defendant’s prior convictions would make him automatically guilty of selling drugs, she answered that it would not. She added the acknowledgment that it might, however, be difficult to be open-minded. Prospective Juror 14 was asked the same question immediately thereafter and also responded that it would not make him automatically guilty. When pressed further by defense counsel if it would be difficult to be fair and objective, she replied “ [m] aybe slightly, to be honest.” This response was the only basis for defense counsel’s challenge for cause as to that juror.
For the majority to overrule the trial court’s balanced rulings on these exchanges and to conclude that the trial courts abused their discretion as a “matter of law,” in concluding that these humanly forthright answers did not preclude fair and impartial jury service, diminishes this Court’s “substantial risk” standard of appellate review. The trial courts exercised the power this Court entrusted to them to conclude in these cases that all the contested jurors manifested enough assurances of ultimate impartiality — or at least that they did not pose a “substantial risk” and threat of a biased assessment of the evidence against the defendants. Even if those courts acted “improvidently,” there is no legal basis for this Court to displace their judgment-calls by way of the higher matter-of-law standard.
Voir dire jury selection is more akin to an art than a scientific process. A potential juror may be examined numerous times, by multiple questioners, over a period of several hours or even, as in the Johnson and Sharper cases, over days. Inquiries about particular subjects often occur in a piecemeal fashion, based on intuitive probings by counsel and the court, as well as queries raised by prospective jurors themselves. Prospective jurors frequently give elliptical answers or impressions in street vernacular, not by legal formulae and phrasings. They may also provide nuanced hedgings for a variety of human and psychological reasons. Today’s decisions reinstate *619 formalistic prerequisites and superimpose a rigid review standard — otherwise widely eschewed as to many trial practices. The rubrics emanating from these cases switch the gears on this State’s flexibly and empirically well-founded voir dire practices.
In People v Williams (63 NY2d 882), this Court instructed that, where a potential juror expresses racial biases, the trial court in its discretion must determine whether the potential juror would be able to discharge fairly the duties, if allowed to serve {id., at 884-885). The Court noted that “the only feelings of the jurors were expressed in the abstract, with no disclosure of particular personal conduct ever taken in consequence of such feelings * * * or any other indication of inability to lay personal predilections aside; and the jurors expressed their confidence that, notwithstanding their feelings, they could listen fairly and impartially” {id.). The Court noted that most jurors bring some predispositions when entering the jury box. “It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities {a determination committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation) that his excuse is warranted” {id., at 885 [emphasis added]).
The Court then found no error. Anticipating future practices, it added that were it to rule otherwise in cases involving racial bias, every potential juror who disclosed anything but the total absence of prejudice, notwithstanding the juror’s stated readiness to lay personal feelings aside, would result in and require automatic excusal from jury service {id.). The results in the instant cases move the process down that previously eschewed slope.
Even in the general voir dire universe, this Court has consistently emphasized the broad discretion given to trial courts to manage this key preliminary stage of a jury trial. Indeed, we “recognize [d] that we are dealing with an area of the law which does not lend itself to the formulation of precise standards or to the fashioning of rigid guidelines” (People v Boulware, 29 NY2d 135, 139, cert denied 405 US 995). The Court further noted that “it is the function of the trial court, involved and concerned with the quest for truth, to strike the balance, true, no less in the conduct of the voir dire than in the conduct of the trial proper” (id., at 140; see also, People v Jean, 75 NY2d 744, 745; People v Pepper, 59 NY2d 353, 358-359; People v Stanard, 42 NY2d 74, 81-82, cert denied 434 US 986).
*620 Thus, the determination of whether actual bias has been displayed and whether a prospective juror’s uncertainties are unequivocal is responsibly and reliably allocated to trial court weighing. After all, Trial Judges have the advantage of seeing each potential juror’s demeanor and body language in context of the whole of the questions and answers exchanged with the entire venire panel, as well as those uttered by the for-cause challenged individuals.
Even assuming that a prima facie showing of actual bias was made with respect to each of the challenged jurors in these cases — a conclusion which we strongly dispute on these transcripts, read as a whole and carefully scrutinized from this final forum perspective — the trial courts remain vested with the discretion. They must weigh whether a “substantial risk” of possible bias was offset by the full give-and-take exchanges.
In People v Culhane (33 NY2d 90), four prospective jurors were challenged for cause, primarily based on their impressions after having read newspaper articles and hearing radio reports regarding the crimes charged (id., at 96-97). The Court noted that Code of Criminal Procedure § 376, the statute in effect at the time, “severely limited the grounds for automatic disqualification” and provided that “ ‘actual bias’ could be purged by the recitation of a statutory oath provided the court in its sound discretion was satisfied that the oath had dispelled the taint” (id., at 102 [emphasis added]). In Culhane, a prima facie showing of actual bias was made as to the four prospective jurors, thus the Court turned to the oath requirements (id., at 106). The Court noted that the statutory oath requires the juror to declare a belief on whether a previously held impression or opinion will influence the verdict and whether the juror can render an impartial verdict according to the evidence (id., at 106-107). Thus, “to this extent the testimony must be taken as a whole,” and if the oath has met these standards, the trial court must “determine whether the prior opinion or impression has lost its sway over the mind of the juror” (id., at 107).
Addressing the still-current CPL provision which had been enacted in the interim, the Court noted that “the new law gives the Trial Judge greater flexibility and a greater responsibility” in determining which prospective jurors should be excused for cause, due to the abandonment of the expurgatory oath requirement (id., at 104, n 2). Culhane reinforced the broad discretionary powers vested in the trial court by statute and calibrated precedents, based in part on the better vantage *621 point of trial courts to evaluate voir dire exchanges as a whole and in the context of that front-line environment.
While the majority today relies heavily on People u Blyden (55 NY2d 73), that case does not restrict the discretion entrusted to trial courts to provide balancing judgments in resolving these matters. Nor does Blyden come close to compelling the matter-of-law results, extrapolated out of these voir dire transcripts.
In Blyden, this Court referenced the important footnote in Culhane, quoted earlier, while agreeing that an expurgatory oath might still be useful as an extra reassurance to resolve doubt about a prospective juror’s impartiality (see, id., at 77). Blyden establishes that when questions involving a juror’s ability to render an impartial verdict are raised, the juror’s statements as a whole and in context must indicate that he or she will be able to serve impartially and render a verdict based solely on the evidence (id., at 77-78). In the present cases, taking the exchanges as a whole and in context, there is no justification to go so far as to conclude that the trial courts violated their discretionary authority, as a matter of law, in their determinations that the responses by prospective jurors were overall satisfactory to withstand a for-cause challenge. Thus, Blyden is manifestly distinguishable.
Very importantly, People v Williams (63 NY2d 882, supra) also distinguished Blyden. This Court unanimously underscored, with the benefit of common-law empirical perspective and applications in specific cases decided after Culhane and Blyden, that the determination whether a potential juror’s responses are unequivocal should be left virtually exclusively to the trial court. Williams placed Blyden in context by noting that in Blyden the juror could do no more than state in response to the court’s thrice-repeated question that he thought he could put aside his feelings about minorities (id., at 884). This Court pushes the Blyden envelope well beyond Williams’ carefully circumscribed analysis. In realistic terms, today’s matter-of-law modality conflates the intermediate appellate court mode of superintendence (see, CPL 470.15-470.25).
We offer another apt analogy from People v Mackey (49 NY2d 274). This Court used the common-law, experience-taught method to conclude that the exclusion of prior convictions was properly a matter of discretionary weighing — not a “matter-of-law” modality — vested “virtually exclusively” in the trial courts, fortified and supervised by the plenary review power of inter *622 mediate appellate courts. We noted that we could not “say that the ruling of the pretrial Judge or that of the Trial Judge * * * constituted the clear abuse of discretion that would make it reversible error” (id., at 281-282). Mackey concludes that “[u]nder these circumstances, adherence to the ruling of the pretrial Judge is not such an exercise of discretion as, after affirmance by the Appellate Division, warrants reversal” (id., at 282). That prudent and respectful allocation of judicial power not only has worked very well, it also applies, a fortiori, to the grey, arguable shadings presented by these voir dire transcripts (see also, People v Gray, 84 NY2d 709).
The finely balanced set of rubrics that we propose based on this Court’s precedential guideposts, leaving such matters to “a discretionary determination for the trial courts and fact-reviewing intermediate appellate courts,” makes a lot of good sense (see, People v Mattiace, 77 NY2d 269, 274). Plenary review by intermediate appellate courts, with discretion and interest of justice powers should play a role in this Court’s decisional choices about such cases. It is very important to point out the existence of that safeguard because it proportionately protects against unfettered, arbitrary and even improvident exercises of trial court discretion. As dissenters, we also agree that more prophylactic practices like exceptional expurgatory oaths or even more probing explorations should be undertaken at the trial level, when appropriate. On the other hand, formalisms that unnecessarily pinch trial court discretion should not be mandated as a matter of law.
The voir dire exchanges in these cases presented dynamic variables and, to be frank, some degree of uncertainty or unevenness. Could the trial courts have gone an extra mile to dispel any doubts and nail down a firmer commitment to impartiality? The answer is “Yes.” Did they have to do so in order to avoid an appellate ruling labeling them abusers of trial court discretion, determined as a matter-of-law? The answer should be “No.” The very fact that so many judicial officers have assayed these transcripts so differently (the Trial Judges, the Appellate Division Justices, the Court of Appeals Judges) logically demonstrates that these calibrations were matters of degree, not matter-of-law certainty. The rub of these cases can be appreciated by examining the fuzzy difference between a weighing exercise (discretion), contrasted to a matter-of-law template (more doctrinaire). In the end, the cases present issues that are quintessentially and rightly entrusted to a trial court’s in-the-trenches balancing resolution.
*623 After all is said and done, we dissenters, like our colleagues who comprise the majority, might have ruled differently or pressed the challenged jurors harder, were any of us serving as the trial court Judges. But that is not the test and standard for decision at this Court. Seeing with the benefit of hindsight what might have been done to provide a bit more reassurance does not render wrong the actions taken by these trial courts — at least as measured through the sharper prism of later appellate scrutiny.
Judges Smith, Levine, Ciparick and Rosenblatt concur with Chief Judge Kaye; Judge Bellacosa dissents and votes to reverse in a separate opinion in which Judge Wesley concurs.
In People v Johnson and People v Sharper: Order affirmed.
In People v Reyes: Order reversed and a new trial ordered.