(December 8, 2016)

■ The People of the State of New York, Respondent, v Durville Small, Appellant. [43 NYS3d 283]—

Judgment, Supreme Court, Bronx County (Darcel D. Clark, J.), rendered December 21, 2011, as amended January 23, 2012, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to consecutive terms of 25 years to life and 10 years, reversed, on the law, and the matter remanded for a new trial.

The trial court's denial of a for-cause challenge by defense counsel was reversible error. The prospective juror's voir dire over two days, when viewed as a whole, demonstrates that her state of mind was likely to preclude her from rendering an impartial verdict. Moreover, her expressions of bias during her voir dire were not replaced by an unequivocal assurance of impartiality, despite further inquiry by the trial court and defense counsel. Accordingly, we remand for a new trial.

On October 5, 2011, during its preliminary voir dire, the trial court individually asked each prospective juror if he or she had been a crime victim. The prospective juror at issue (Ms. J.) stated that her sister had been raped by a man who "had took her eye out (sic)," and that her brother had been murdered. The questioning continued as follows:

"The Court: So the fact that you had two siblings that were the victims of very serious crimes, would that prevent you from being fair and impartial on a criminal case?

"Ms. J.: Probably.

"The Court: You won't be able to do it?

"Ms. J.: I don't know. I am not sure.

"The Court: I can't hear you.

"Ms. J.: I am not sure.

"The Court: Have you ever served as a juror before?

"Ms. J.: No.

"The Court: And you don't think you can set aside what happened to your siblings and listen to what happened here because this case has nothing do with what happened to them? I know it's difficult and it's tough, and it's terrible what happened. But what we need to know, can you keep an open mind and listen to stuff that happened in this case, listen to what happen [sic] in this courtroom, and not what happened in your personal life or outside the courtroom? You think you would be able to do that?

"Ms. J.: I do.

"The Court: You can?

"Ms. J.: Yes."

Later in its voir dire, the trial court asked Ms. J. if there was any reason why she would not be fair and impartial in the case and she answered, "No." The trial court then asked, "You could be fair and impartial?" Ms. J. answered, "Yes."

However, the next day, October 6, 2011, during the People's voir dire, Ms. J. returned to her initial position, as follows:

"[The People]: Now, I know, [Ms. J.], you have unfortunately had family members who were the victim of crimes. Do you think anything about that experience will impact your ability to be fair in this particular case?

"Ms. J.: It probably will.

"[The People]: It probably will?

"Ms. J.: Mm-hmm.

"[The People]: Okay. Thank you."

The trial judge did not inquire further after this exchange. At a later point, defense counsel asked Ms. J. if she would have any difficulty in returning a not guilty verdict if she had a reasonable doubt. She stated, "No," and repeated this when the People asked her to repeat her response.

When defense counsel moved to excuse her for cause, the

trial court denied the challenge, stating that Ms. J. said "she could still be fair, that she would be able to listen, she could render a verdict."

Under CPL 270.20 (1) (b), a prospective juror should be excused for cause if it is found that, "[she] has a state of mind that is likely to preclude [her] from rendering an impartial verdict based upon the evidence adduced at the trial." If a prospective juror has expressed a "state of mind likely to preclude impartial service, [she] must in some form give *unequivocal* assurance that [she] can set aside any bias and render an impartial verdict based on the evidence" (*People v Johnson*, 94 NY2d 600, 614 [2000] [emphasis added]). Accordingly, when a prospective juror has failed to follow an indication of bias during voir dire by an unequivocal assurance of impartiality, a for-cause challenge should be granted (*see People v Torpey*, 63 NY2d 361, 367-368 [1984]; *People v Blyden*, 55 NY2d 73, 78-79 [1982]). There are no magic words or talismans that render a response equivocal or unequivocal; a prospective juror's statements during voir dire must be taken in context and as a whole (*People v Chambers*, 97 NY2d 417, 419 [2002]). However, once a prospective juror expresses doubts about his or her ability to serve, "nothing less than a personal, unequivocal assurance of impartiality can cure a juror's prior indication that she is predisposed against a particular defendant or particular type of case" (*People v Arnold*, 96 NY2d 358, 364 [2001]).

Viewing this prospective juror's two-day voir dire as a whole, we find that she did not give unequivocal assurance of an ability to be impartial for two reasons. First, we disagree with the dissent that Ms. J.'s response to defense counsel's question on October 6 alleviated the concerns of bias raised by her answers earlier that day in response to the People's questions. Although Ms. J. did tell the trial court on October 5, 2011 that she could set aside the crimes against her siblings when considering the evidence, she informed the People during their voir dire on October 6, 2011 that these tragedies would "probably" impact her ability to be fair. Following this response to the People, the only inquiry of Ms. J. was by defense counsel, who asked if she could return a not guilty verdict if she believed the People did not meet their burden beyond a reasonable doubt.

However, the Court of Appeals has been clear that a general inquiry as to whether a prospective juror can follow the court's instructions does not "force [a juror] to confront the crucial question whether she could be fair to this defendant in light of her expressed predisposition," and therefore does not rehabili-

tate a juror who has expressed doubts about his or her ability to serve (*Arnold*, 96 NY2d at 363-364). In *Arnold*, a prospective juror stated that she could not serve on a domestic violence case because her prior academic study of domestic violence might impede her ability to be impartial (*id.* at 363). Later on, defense counsel asked the entire panel of prospective jurors if they would follow the court's instructions and not use the case as a "referendum" on domestic violence (*id.*). Although the prospective jurors all answered in the affirmative during this group inquiry, the Court of Appeals found this insufficiently curative as to the prospective juror at issue, since "[t]he group answer by the entire panel did not address her personal attitudes" (*id.*). While it is true that the trial judge in this case asked Ms. J. on October 5, 2011 whether the crimes suffered by her siblings would affect her ability to be fair, the judge did not repeat this inquiry the next day when Ms. J. repeated her belief that her siblings' experience might affect her ability to be fair. Defense counsel's general inquiry into whether Ms. J. would have difficulty returning a not guilty verdict if she had a reasonable doubt was insufficient to elicit an unequivocal assurance of her impartiality, as this questioning failed to confront the very issue she had raised: that her siblings' experiences would affect her, thus making it less likely that she might have any reasonable doubt. Just as defense counsel's venire-wide inquiry in *Arnold* did not directly address a prospective juror's personal bias, in this case, defense counsel's general inquiry about reasonable doubt did not directly address the concerns of bias raised by Ms. J. on October 6, 2011.

Second, we find that the totality of Ms. J.'s responses did not indicate that she could set aside what happened to her brother and sister. The Court of Appeals has held that, even when a prospective juror ultimately gives some assurance of an ability to be impartial, if the prospective juror's voir dire as a whole suggests equivocation, the juror is not fit to serve (*see Torpey*, 63 NY2d at 367-368; *Blyden*, 55 NY2d at 78-79). In *Torpey*, a prospective juror stated that she had a negative view of the defendant due to her impression that he had ties to organized crime as a result either of things she had read in the newspaper or conversations with her husband who worked for the local sheriff's office. The prospective *Torpey* juror's voir dire ended with the trial court asking her if she could set aside what she heard about the defendant and give both sides a fair trial based on the evidence alone. She replied, "I think I can" (*Torpey*, 63 NY2d at 363-365). In *Blyden*, the prospective juror expressed race-based bias towards the defendant, after which the trial court obtained an assurance by the prospective *Blyden* juror

that he thought he could set aside his bias and that his mind was "absolutely" not made up (*Blyden*, 55 NY2d at 75). In both cases, the Court of Appeals concluded that, despite some assurance that these prospective jurors could set aside their biases, the voir dire taken as a whole indicated that each prospective juror had not given an unequivocal assurance of impartiality (*Torpey*, 63 NY2d at 369; *Blyden*, 55 NY2d at 79). As the Court of Appeals cautioned in *Blyden*, "A hollow incantation, made without assurance or certitude, is not enough. Where there remains any doubt in the wake of such statements, when considered in the context of the juror's over-all responses, the prospective juror should be discharged for cause" (*Blyden*, 55 NY2d at 78).

That is precisely the issue at play in this case. Although Ms. J. told the trial court on October 5, 2011 that she could be fair and impartial, only one day later she raised the very same concerns about bias that had prompted the trial court's inquiry. Accordingly, the trial court should have retained a doubt about her ability to be impartial when considering all of her statements in context and taken as a whole.

We therefore disagree with our dissenting colleagues that the trial court's ability to observe firsthand Ms. J.'s demeanor supports the denial of defense counsel's for-cause challenge. Regardless of the genuineness of Ms. J's answers on October 5, 2011, she still had doubts about her ability to be fair and impartial, as demonstrated by her own words on October 6, 2011. As the Court of Appeals has stated, "[T]he trial court should lean toward disqualifying a prospective juror of dubious impartiality, rather than testing the bounds of discretion by permitting such a juror to serve" (*People v Branch*, 46 NY2d 645, 651 [1979]). We find that based on the totality of her voir dire, Ms. J. was indeed of dubious impartiality and should have been excused for cause; she openly reiterated, understandably, that the heinous crimes committed against her siblings would affect her despite her prior assurance to the trial court that they would not.

The decision not to excuse Ms. J. for cause constituted reversible error as defense counsel was forced to use a peremptory challenge to excuse her and subsequently expended all of his peremptory challenges prior to the end of jury selection (*see* CPL 270.20 [2]; *People v Braxton*, 277 AD2d 39, 40 [1st Dept 2000], *lv denied* 95 NY2d 961 [2000]). Although Ms. J. would have sat as an alternate, the replacement juror who ultimately sat in the alternate seat wound up serving on the jury. Therefore, the issue is not moot (*see People v White*, 297 AD2d 587, 588 [1st Dept 2002], *lv denied* 99 NY2d 565 [2002]).

We have considered and rejected defendant's arguments concerning suppression rulings. Since we are ordering a new trial, we find it unnecessary to reach any other issues. Concur—Sweeny, Andrias and Gesmer, JJ.

Tom, J.P., and Webber, J., dissent in a memorandum by Webber, J., as follows: I respectfully dissent. In my opinion, the trial court properly denied defendant's challenge for cause to a prospective juror. The totality of the responses by the prospective juror established that she could be fair and impartial.

Defendant was charged with second-degree murder, first-degree manslaughter and second-degree criminal possession of a weapon. It was alleged that defendant quarreled with the deceased during a basketball game at a neighborhood playground, that he left the playground and returned 20 minutes later with a gun and shot and killed the deceased.

During the preliminary voir dire by the court, the prospective juror, referred to as Ms. J., informed the court of crimes that had been committed against two of her siblings. Ms. J. responded to follow-up questions from the court, and provided multiple unequivocal assurances that she could consider what "happen[ed] in the courtroom" rather than in her personal life. Ms. J. also informed the court that while her son had been convicted of a drug-related crime, his conviction would not prevent her from being a fair and impartial juror. Thus, she assured the court that she would be able to render an impartial verdict based on the evidence (*see People v Chambers*, 97 NY2d 417 [2002]).

Contrary to the conclusion of the majority, defense counsel's question to Ms. J. as to reasonable doubt also allayed any concerns as to her bias or inability to be fair and impartial. During the People's voir dire, Ms. J. stated that the fact that her siblings had been the victims of crimes would "probably" impact her ability to be fair. During the voir dire by the defense, defense counsel asked if she would have any problem in returning a verdict of not guilty if she had a reasonable doubt. She stated she would have "no problem." She then repeated her response when asked by the People to do so. Thus, Ms. J. stated unequivocally that she would be fair and impartial and would have no difficulty returning a not guilty verdict if she had a reasonable doubt (*see People v Chambers*, 97 NY2d at 419; *People v Narvaez*, 125 AD3d 415 [1st Dept 2015], *lv denied* 25 NY3d 991 [2015]).

Here, unlike in *People v Arnold* (96 NY2d 358, 364 [2001]), which is cited by the majority, defense counsel's question regarding reasonable doubt, which was directed specifically to

Ms. J., did "force her to confront the crucial question whether she could be fair to this defendant in light of her expressed predisposition" (*id.* at 363-364). Further, unlike in *People v Blyden* (55 NY2d 73, 78-79 [1982]), also cited by the majority, the totality of Ms. J.'s responses indicated that she could set aside any bias or hostility based upon what happened to her siblings.

As noted by the Court of Appeals in *People v Williams* (63 NY2d 882, 885 [1984]): "[M]ost if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities (a determination committed largely to judgment of the Trial Judge with his peculiar opportunities to make a fair evaluation) that his excuse is warranted. Were the rule otherwise, it would be difficult not to require the discharge . . . of every potential juror who disclosed anything but total absence of prejudice . . . , notwithstanding his stated readiness to lay his feelings aside in the discharge of his duties as a juror."

Clearly Ms. J. brought with her certain life experiences. However, her final and unequivocal responses to the questions posed by the court and defense counsel clearly indicated that those life experiences would not interfere with her ability to be fair and impartial or to follow the court's instructions to render an impartial decision.

Finally, this Court should defer to the determination of the trial court that the challenge for cause should have been denied. As noted in *Williams*, the trial court was in the best position to observe the demeanor of the prospective juror and to determine if her promise to be impartial was credible (*People v Arnold*, 96 NY2d at 363; *see also People v Shulman*, 6 NY3d 1, 27 [2005], *cert denied* 547 US 1043 [2006]; *People v Ellis*, 305 AD2d 208 [1st Dept 2003], *lv denied* 100 NY2d 580 [2003]).

Based on the voir dire record as a whole, and giving due deference to the determination of the trial court, I do not believe it was an improvident exercise of discretion to have denied defendant's challenge for cause.