## COURT OF APPEALS,

### Jan. 5, 1909.

## THE PEOPLE v. WILLIAM JONES.

### (194 N. Y. 83.)

(1). MURDER—DEFENSE OF INSANITY.

Evidence tending to show that a person on trial for homicide is of a low order of intellect, and had a violent and uncontrollable temper and disposition, falls far short of establishing that his mind is so deficient or perverted that he cannot appreciate the character of his acts at the time of the homicide.

(2). SAME.

The evidence upon the trial of an indictment for homicide, to which the defense of insanity was interposed, reviewed, and *held*, that the jury was justified in determining that the defendant was not insane, and that the evidence warranted a verdict convicting the defendant of the crime of murder in the first degree.

APPEAL from a judgment of the Supreme Court, rendered February 26, 1908, at a trial term for the county of Nassau, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*H. Willard Griffiths, for appellant.* There was not sufficient evidence to prove the case, and, upon the whole evidence, the jury was not justified in finding the prisoner guilty of murder in the first degree. *O'Brien v. People,* 36 N. Y. 276; *People v. Kelly,* 113 N. Y. 647; *People v. Smith,* 162 N. Y. 520; *People v. Kennedy,* 32 N. Y. 141; *People v. White,* 176 N. Y. 331; *People v. Majone,* 91 N. Y. 211; *People v. Wadsworth,* 4 N. Y. Cr. Rep. 355; *People v. Fish,* 125 N. Y. 136; *People v. Clark,* 7 N. Y. 293; *People v. Juna,* 110 N. Y.

Supp. 83.   The verdict was against the weight of evidence and against the law.   *Sanchez v. People,* 22 N. Y. 147.

*Franklin A. Coles, District Attorney,* for respondent.

HISCOCK, J.:

The defendant has been charged with and convicted of the crime of murder in the first degree because, as alleged, he shot one Bunn on Sunday, September 1, 1907, in the town of Hempstead.

We are asked to reverse the judgment upon the usual grounds of insufficiency of evidence and errors of the trial judge in the conduct of the trial.   The first contention that the evidence was insufficient relates to the People's case not only upon the general issue of deliberate and premeditated killing, but also upon the special issue of the defendant's responsibility raised by the plea of insanity.

While the appeal involves a consideration in detail of the weight and sufficiency of evidence we were not for some reason aided by any oral argument of counsel for the defendant. We doubt not, however, that our personal examination of the record, aided in some degree by the printed brief, has defined all of the questions available to the defendant upon this appeal and suggested all of the arguments to be made thereon in his behalf.

Assuming for the present that he was responsible for his acts, we entertain no doubt that the testimony very conclusively proved that he was guilty of the crime of which he has been convicted.

Witnesses who seem to have been reputable, and with the exception of a brother of the deceased, who gave cumulative evidence upon minor points, entirely disinterested, by their uncontradicted testimony fully established amongst others the following facts:

The defendant, who was a colored man, and the deceased,

who apparently also was a colored man, for some time had been acquainted and fellow-employees in a livery stable in the village of Hempstead. During the forenoon of the day of the alleged murder the two men became involved in an altercation. In the afternoon the defendant purchased a revolver and cartridges, and subsequently on being asked who had struck him, replied, "Bunn," and then showing a revolver, said, "I will fix him." Later, although not on duty that day, he went to the livery stable where he and the deceased were employed, and subsequently another person in the stable hearing a pistol shot looked out and saw the defendant with a revolver in his hand pointed toward the feet of Bunn, who was standing some little distance away and facing him. When this person asked, "Jones, what are you doing?" the latter replied, "I dare you to come here, too." This witness then fled, and, as he was fleeing, heard a second pistol shot from the direction where the men were, and when he returned in 15 or 20 minutes found Bunn lying on the ground either then dead or shortly thereafter dying as the result of a pistol shot received in the breast. The defendant forthwith fled, and that evening was seen getting off a car at Queens. At first, when questioned by a police officer, who apparently was on the lookout for him under a police alarm, he denied his identity and former whereabouts, giving a fictitious name and a false account of his movements. Subsequently, however, he admitted to this officer his identity, and that he had shot the deceased, claiming first as the reason therefor some grudge and afterwards giving the explanation of a fight. He also admitted the ownership and identity of the revolver and cartridges which he had left in the toilet room of a hotel at Queens. The defendant again to this same witness on the following day repeated the claim of a grudge as the explanation of his killing the deceased, and he also admitted to other witnesses that he had shot the deceased, the admission in one case being coupled with the claim that he had to defend himself as the latter had a razor, there being,

however, no other evidence of the possession by the deceased of any such weapon. In addition to the general trend of the evidence as bearing upon that subject, it specifically appeared that the defendant within a few hours both before and after the alleged murder seemed to be entirely normal and self-possessed.

The statement of the undisputed facts thus testified to by the witnesses for the prosecution carries with it its own argument. In our judgment the jury were entirely justified in believing the evidence which was presented to them in behalf of the People on this branch of the case, and thus believing it and barring the special defense of insanity, they not only were warranted in reaching the conclusion which they did as to the guilt of the defendant, but practically were prohibited from taking any other rational view. The motive of revenge was present in the defendant's mind; he deliberately prepared to satisfy this motive by purchasing a revolver and cartridges, and he expressly indicated his purpose to satisfy it by his statement of an intent to "fix" the deceased; his attitude as described by the witness Jackson in facing the deceased with a revolver in his hand and the interval which occurred between the first shot, which was apparently harmless, and the second shot, which was fatal, his flight and his subsequent confessions and acts establish that he deliberately and remorselessly carried out his purpose.

But it was pleaded on the trial and is now urged that the defendant was insane and, therefore, not to be charged with legal responsibility for these acts which in the ordinary person would import the highest degree of criminal intent, and on the trial his counsel endeavored to elicit some evidence in support of this plea. His efforts were very unsuccessful. In view of his lack of success in securing the admission of evidence, we have studied all the more carefully not only the evidence which was admitted but also that which was stricken out and even the suggestions of counsel about what he thought

he might be allowed to prove, for the purpose of determining not only whether this defense was established, but also whether there seemed to be any reasonable possibility of its being established on another trial. This study of the record, however, fails to disclose any such evidence or probability of evidence as requires a reversal of the judgment on this question.

The most important testimony on behalf of the defendant was given by a sister, and her evidence as well as that of other witnesses from whom the counsel succeeded in eliciting any testimony was to the effect that the defendant on various occasions, entirely or mostly occurring some time before the homicide, made apparently unprovoked assaults on members of his family and others, and that on such occasions especially his appearance was excited and abnormal, frequent reference being made in his sister's testimony to his "glary and stary eyes." A physician gave an account of an examination made of the defendant at the time of the trial, but aside from the witness' conclusion that the defendant was suffering from loss of memory, a symptom which, even if present, was manifestly a thing of easy simulation, there is scarcely anything in his history of the examination calculated even to attract attention in a consideration of the present question. Lastly, two experts on hypothetical questions, embracing facts testified to by the sister and other lay witnesses, expressed a rather inconclusive opinion that the defendant was or might be insane.

In answer to this testimony was that of three experts sworn in behalf of the People, who testified that the evidence in behalf of the defendant in their opinion did not justify the conclusion that he was insane at the time of the occurrences detailed, and that even if he was then insane it would not at all follow that such insanity continued to the time of the homicide. But more important than this testimony, in our judgment, was the evidence of various witnesses detailing the conduct and movements of the defendant on the day of and shortly before and after the homicide. Some of these spoke especi-

ally and directly in respect to his self-possessed and normal appearance, while others simply repeated his conversations and described his acts, but whichever they did, all of them made it entirely clear that there was no lack of comprehension on defendant's part of the scope and nature and effect of the purpose which he formed and so effectually executed.

When we consider all of this testimony in its entirety, we conclude that the jury was amply justified in determining that the defendant was not insane. The evidence fairly indicated, as might be expected, that he was of rather a low order of intellect, and some of it, if believed, indicated in the absence of some hidden explanation that he had a violent and uncontrollable temper and disposition. But it falls far short of establishing that his mind was so deficient or so perverted that he could not distinguish and appreciate the character of the acts which he was performing at the time of the homicide, and we should be entirely unjustified in deciding that any such error has been committed in the disposition of this branch of the case as to require a new trial.

We have examined all the exceptions taken to the rulings of the court. The charge of the trial judge was a very full and careful exposition of the principles of law governing the jury in their deliberations. He commented on the evidence so far as seems to us to have been necessary in view of the very plain and comparatively brief character of the testimony, and we think that neither in his charge nor in his rulings on evidence was any substantial error committed which prejudiced the rights of the accused.

The judgment, therefore, must be affirmed.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN, WERNER and CHASE, JJ., concur.

Judgment of conviction affirmed.