OPINION OF THE COURT
Richard C. Giardino, J.
*990 Defendant sought to have the verdicts of guilty, after trial of attempted murder in the second degree, assault in the first degree, and numerous other counts arising out of a shooting at a Schenectady diner on August 6, 2006, set aside on three specific grounds under CPL 330.30 (2). That motion was denied in its entirety by previous decision of this court finding no merit in defendant’s arguments. However, another issue for consideration arose during the course of the motion practice on the CPL 330.30 application.
In its memorandum opposing the defendant’s initial motion to set aside the verdict the People disclosed to the court and opposing counsel a disturbing conversation with juror No. 6. The juror allegedly stated in a phone conversation with the Assistant District Attorney: “I guess I based my [decision] on race.” Juror No. 6 is a middle-aged white male. The defendant is a young black male. Further portions of the original phone conversation and a second phone conversation between the Assistant District Attorney and the juror are set forth below.
Based upon the disclosures of the Assistant District Attorney, the court ordered a hearing be held with regard to possible juror misconduct which was brought to light by the Assistant District Attorney’s letter. The People opposed such a hearing since it was not based upon a sworn affidavit of the juror. (See People v Johnson, 54 AD3d 636 [1st Dept 2008] [sworn allegations required to order a hearing under CPL 330.30]; People v Camacho, 293 AD2d 876 [3d Dept 2002].) This court believes that the letter memorandum of the Assistant District Attorney is equivalent to a sworn affidavit since the Assistant District Attorney is an officer of the court. Notwithstanding the cases cited by the People, the court found this matter too important to dispose of without a hearing.
Facts
Following the verdict and after discharging the jury, the court asked the jury to please wait to meet with the court and the attorneys. The court employs this practice to personally thank the jury and to allow counsel the opportunity to speak with the jurors. The court has utilized this practice in over 100 cases as a courtesy to the attorneys to allow them to obtain information on how jurors think and what may be useful in the future.
During this postverdict discussion, the jurors replayed a video that was properly admitted at trial. Several jurors pointed out to the court and the attorneys a certain few frames showing a light flash or a flame or a puff of smoke, described variously.
*991 Defense counsel sent an investigator to interview a number of jurors. Based upon his investigation defense counsel filed a motion to set aside the verdict. Counsel provided the court with five sworn statements from jurors and a sworn statement from the investigator relaying his conversation with another juror. In preparing her response, the Assistant District Attorney contacted a number of the jurors, including juror No. 6, and filed a letter memorandum in opposition to the defense counsel’s motion.
The Assistant District Attorney reported two conversations with the juror which are summarized from her letter. The Assistant District Attorney reported to the court that juror No. 6 allegedly stated to her that he guessed he “based his decision on race.” The juror also rambled on about the “captivating beauty” of the Assistant District Attorney and the fact that she “was just like a real lawyer.”
A few days later she called the juror back and explained she would be reporting his comments to the court. He stated that he had “had a few drinks” before his first conversation with the Assistant District Attorney, and that he was “not a bigot.” He added that he had worded his remarks wrong. He further stated “that he did not base his determination of guilt on race.”
In a further, more bizarre remark, he allegedly stated that he had watched the October 15 presidential debate and he was-“very impressed with [now President] Obama,” noting that “he made McCain look bad.” He again stated that he “didn’t convict the defendant because he was black.”
The court gave great weight to the representations of the Assistant District Attorney as an officer of the court and commended her for reporting these questionable remarks.
The court found there was sufficient cause to order a hearing solely with regard to juror No. 6’s comments about basing his decision on race. Without actual testimony under oath it would have been impossible to fully assess the juror’s remarks. However, it is clear that racial bias or prejudice has no place in a determination of guilt in a criminal jury trial. (People v Blyden, 55 NY2d 73 [1982]; People v Rukaj, 123 AD2d 277 [1986].)
A hearing was held on December 10, 2008 on the limited issue of juror No. 6’s remarks. The hearing was to determine what if any role race played in reaching a verdict by juror No. 6. This court would review the facts to determine if the motion to set aside the verdict should be granted either because of *992 improper conduct by a juror outside of the presence of the court affecting a substantial right of the defendant (CPL 330.30 [2]), or because of any ground that would require reversal or modification as a matter of law on appeal (CPL 330.30 [1]).
The Assistant District Attorney affirmed that everything in her October 16, 2008 letter to the court with regard to the juror’s remarks was true and accurate.
At the hearing juror No. 6 testified to a number of facts, including:
Under questioning by the court:
He drinks a lot and can’t remember from one week to the next.
When he got off the phone with the Assistant District Attorney, “household people” said “you incriminate yourself, you talk too much.”
Under questioning by defense counsel:
When asked if he recalls indicating that he based his decision on race, he replied “Absolutely not,” indicating that he didn’t remember saying it.
He recalled telling the Assistant District Attorney that he was not a bigot and that half his friends were black. He recalled stating that he had watched the presidential debate and he was very impressed with Obama and he added that he voted for Obama.
When asked if he remembered telling the Assistant District Attorney specifically that he “did not convict the Defendant because he was black,” he said he “can’t remember from one week to the next.” Juror No. 6 denied that he would ever say he based his decision on race, he further stated he had medical problems, including “elmeyers [sic] or something.”
Under questioning by the Assistant District Attorney:
The Assistant District Attorney asked juror No. 6 if he remembered being impaneled as a juror, taking an oath and being asked if he could promise to make a decision about the case based on the evidence. He responded: “Yeah right, I do remember that.” He further added that he stuck to the oath “the best I could, I would say I did.”
The court interjected and asked if the juror remembered making any comments to the Assistant District Attorney about the defendant’s race. The juror replied, “Oh, no, absolutely not. I am positive of that.”
Under further questioning from the Assistant District Attorney the juror affirmatively stated that his decision of the *993 defendant’s guilt was not based on the defendant’s race. He also stated that during deliberations no one mentioned the defendant’s race.
Upon further questioning by the court he denied the comments as related by the Assistant District Attorney about race, said he would not say it, but he drinks a lot and “might have jokingly said it. I don’t think I did.”
Conclusions of Law
Issue One:
Whether there is proof to establish that juror No. 6 stated that he “guessed” he “based his decision on [defendant’s] race” in an out-of-court postverdict hearsay statement to the Assistant District Attorney?
The proof establishes to this court beyond a reasonable doubt that juror No. 6 did say that he “guessed he based his decision of guilt on race.” The court finds the Assistant District Attorney credible and accurate in her letter recitation, later affirmed, of her two conversations with the juror.
The court finds the testimony of the juror incredible that he did not and would not have said that he “guessed he based his decision on race.” The denials are further weakened by such platitudes as “half of my friends are black” and “I voted for Obama.” Such a statement of a race-based decision of guilt in a criminal case should not and cannot be excused due to intoxication or joking.
Issue Two:
Was juror No. 6’s personal opinion relayed to the jury in any way that improperly affected the jury deliberation process in such a way that a substantial right of the defendant was violated?
No. There was no testimony or proof to establish that any of juror No. 6’s personal opinions about race were ever relayed to the other jurors or affected the other jurors’ deliberations in any way. Therefore, no substantial right of the defendant was improperly affected during jury deliberation. In People v Rukaj (123 AD2d 277 [1986]), the verdict was reversed on two grounds. The first being improper influence on the deliberating jury related to comments by a court officer regarding sequestration. The second ground involved prejudicial remarks by black jurors against a white defendant and his white attorney, wherein one juror stated: “we as blacks should not let ‘whitey’ to win out” *994 (123 AD2d at 279). Both grounds involved information or comments that permeated the deliberative process, unlike the present case.
Issue Three:
Does the juror’s statement that he guessed he based his decision on race, rise to the level of juror misconduct requiring the setting aside of the verdict without regard to deliberation?
This answer is not so simple. The well established general rule is “that jurors may not impeach their own duly rendered verdict by statements or testimony averring their own misconduct within or without the juryroom.” (People v De Lucia, 15 NY2d 294, 296 [1965], cert denied 382 US 821 [1965]; CPL 330.40 [2] [e] [i], [ii].) A defendant’s US Constitution Sixth Amendment rights outweigh this general rule.
“We assume that most if not all jurors bring some predispositions, of varying intensity, when they enter the jury box. It is only when it is shown that there is a substantial risk that such predispositions will affect the ability of the particular juror to discharge his responsibilities . . . [that] excuse is warranted.” (People v Williams, 63 NY2d 882, 885 [1984].)
Williams reiterated the rule that if a juror could clearly and unequivocally state that he could set aside his personal opinions and discharge his duties as a juror fairly, his personal opinions would not be grounds to discharge him. In Williams, two jurors disclosed their negative personal feelings about race during jury selection, they were questioned about them and unequivocally stated they could be fair.
In the present case, the misconduct occurred when the juror failed to disclose a personal opinion of the defendant’s guilt during voir dire. In so doing, he prevented defense counsel from exploring whether such opinion could be set aside and a decision based solely on the evidence. At the postverdict hearing the juror said he based his decision on the evidence and not the defendant’s race, however, his credibility is questionable at best. To attempt to reassure the court and the parties after his remark has become public further undercuts his credibility.
In People v Rivera (304 AD2d 841, 841 [2d Dept 2003]), the Appellate Division reversed the denial of the defendant’s postverdict motion to set aside a verdict based on a statement by a juror that “I know that n...r is guilty.” The Court found (at 842) that “reversal is warranted where a juror has an undisclosed preexisting prejudice that would have resulted in his or *995 her disqualification if it had been revealed during voir dire, such as an undisclosed, pretrial opinion of guilt against the defendant.”
In People v Blyden (55 NY2d 73, 78-79 [1982]), the Court reversed a conviction where during voir dire a “juror’s initial statements indicated a hostility to racial minorities that cast serious doubt on his ability to render an impartial verdict . . . and [t]o the Judge’s questions, the juror merely responded that he thought he could put aside his personal feelings and keep an open mind.” The Court (at 79) found that those statements fell short of “the required express and unequivocal declarations” that his “bias would not influence his verdict or that he could render an impartial verdict based on the evidence presented.”
Unlike Blyden, in the present case the juror did not disclose his preexisting personal opinion of guilt based on race, so there was no opportunity to explore the depth of his feelings and whether prior to his selection he could have unequivocally stated he could be fair and base his decision only on the evidence.
The People argue that given the overwhelming evidence of guilt a harmless error analysis should apply if the court determines that juror No. 6’s statement rises to the level of juror misconduct. Harmless error analysis applies when there are trial errors which can be assessed based on all the evidence. (People v Cabey, 85 NY2d 417 [1995].) This court is of the opinion that the evidence of guilt is overwhelming and beyond a reasonable doubt. However a harmless error analysis would not apply on these facts.
The issue before this court goes directly to the right to have a jury free from preconceived notions and biases, one that will be fair and one that prior to the submission of evidence can guarantee to base its decision solely on the evidence.
The court has given this matter a thorough review. The court is well aware of the extreme remedy sought and the great expense in time, money and resources to retry this matter. The court further recognizes the seriousness of the crimes, the overwhelming evidence of guilt and the personal difficulty and sacrifice to the witnesses should they be required to testify again. The court is aware of the possibility that the case will weaken with time and the possibility that innocent changes in testimony may occur based on the passage of time, which may unfairly impact a future verdict.
The court must weigh and balance all of those considerations against the basic fundamental constitutionally guaranteed right to a fair trial.
*996 People v Jones (115 NYS 800, 801 [1909], affd 194 NY 83 [1909]) gives the court some guidance since “[t]he motion is addressed to the sound discretion of the court, and whether it should be granted or refused involves the inquiry whether substantial justice has been done; the court having in view solely the attainment of that end.”
“Grave doubt persists whether the verdict was tainted by prejudice and bias. If so, the jury finding is suspect, and the defendant did not have a fair and impartial trial.” (People v Whitmore, 45 Misc 2d 506, 531 [1965] [verdict set aside by trial court based upon, in part, discussions by jurors expressing racial bias against the defendants].) Whitmore was reversed after the retrial by the Second Department on other grounds. (People v Whitmore, 27 AD2d 939 [1967].)
“Prejudice or racial bias, in any of its ugly forms, has no place in an American court of justice. It destroys the concept of fundamental fairness; it steals from the accused full and equal protection of the law, and strips him of those safeguards guaranteed and secured by the Bill of Rights and the provisions of the Constitutions both Federal and State. Failure to act in a case that raises grave doubt of suspected conduct that made a fair and impartial trial an impossibility would violate every principle of fairness and decency. The obligation of the court is clear. Any concern expressed in disturbing the verdict of a jury must be subordinated to the rights of the accused when the court is convinced that he has been deprived of one of the constitutional guaranteed ‘absolutes’. Deprivation of the absolute right of [the] accused to a fair and impartial trial reduces the process of law to a mere sham (Mooney v. Holohan, 294 U.S. 103). It destroys the hope of fundamental fairness and undermines the constitutional provisions of the Fourteenth Amendment clause of the Federal Constitution.” (Whitmore, 45 Misc 2d at 520.)
Therefore, it is for the above reasons that this court is compelled to set aside the verdict in this matter and order a retrial pursuant to CPL 330.30 (1) and (2).